## 20580.  SUDAN *v.* THE STATE.

Decided July 15, 1930.  Rehearing denied October 2, 1930.

*John F. Echols,* for plaintiff in error.

*Claude C. Smith, solicitor-general,* contra.

Luke, J.  David Sudan was tried on an indictment charging him with committing an assault with intent to murder upon E. L. Adamson, by driving an automobile against an automobile in which Adamson was riding.  The jury found the defendant guilty, and recommended that he be punished as for a misdemeanor.  The exception is to the judgment overruling the motion for a new trial, based upon the usual general grounds and eight special grounds.

E. L. Adamson, sworn for the State, testified that he was sheriff, and that on November 9, 1929, at a time when he had the defendant under arrest, the latter said to the witness: "If you put that damn Studebaker in front of me any more, I am going to knock it out of the road."  The sheriff further testified that about midnight on February 7, 1930, the defendant came down the road driving his automobile in front of another automobile at from forty to fifty miles an hour; that witness pursued defendant; that

Sudan's automobile "kind of held up," and the car which he had been following passed him; that when witness tried to pass Sudan, Sudan drove to his left in front of the car in which witness was riding; that after witness passed defendant and "picked up speed" in an effort to catch the automobile defendant was following, defendant overtook witness's car, driving his automobile into it and knocking it off the road; that witness's car struck a bank about three feet high and turned back into the road without being seriously damaged; that the car in which witness was riding was traveling at the rate of about sixty miles an hour when it passed Sudan's automobile, and picked up speed in order to overtake the other car defendant was following; and that no one in the car in which witness was riding was hurt. The defendant introduced no evidence, and stated to the jury that they had the wrong man, and that he was innocent. The evidence abundantly supports the verdict, and we deem it unnecessary to advert to the other evidence in the case, except to state that it corroborates that of the sheriff.

Special ground 1 alleges that the court erred in permitting E. L. Adamson to testify that he had the defendant under arrest on "the 9th day of November;" the objection being that the witness could identify the defendant "without telling about any other arrest or any other thing." The court admitted this testimony solely for the purpose of showing "motive" on the part of the defendant. If it be assumed that this ground is complete within itself, it discloses no reversible error. The defendant had while under arrest threatened to knock the witness's automobile out of the road, and this testimony was admissible to show motive.

It appears from special ground 2 that the solicitor-general propounded this question to the witness E. L. Adamson: "Mr. Adamson, now tell the jury your connection with this man. Did you have him under arrest?" The witness replied: "Yes, sir." The objection was: "We object to that testimony. It is evidence with reference to another crime wholly separate and distinct from the case at bar. It is immaterial, irrelevant, incompetent, and prejudicial to the defendant, because it puts his character in evidence without his first having introduced evidence on that subject." The court's ruling was: "Go ahead." It does not appear from this ground when, or for what, the defendant was under arrest. In so far as appears, the arrest may have been for the same offense

for which the defendant was being tried. The ground is too incomplete for consideration.

It appears from special ground 3 that E. L. Adamson was asked what would be the natural and reasonable consequences to an automobile and its occupants if it were knocked off the road while traveling sixty-five miles an hour. The objection was: "That calls for a conclusion." The court ruled that the witness could state his opinion, after first giving his reasons therefor. The witness answered: "It is hard to tell. Sometimes I have known them to get knocked off that way and people killed in them, and sometimes they turn over running that way and not so much damage is done. I would rather not be in them, though, when they are going to turn over running at sixty miles an hour." Clearly this ground discloses no reversible error.

Special ground 4 is so similar to the preceding ground that it demands no special discussion. It discloses no reversible error. Grounds 5 and 6 complain of long excerpts from the charge of the court, upon the ground that while each excerpt was abstractly correct, "it was not applicable to the facts proved." Neither of these grounds is valid.

Ground 7 complains of the court's refusal to declare a mistrial under these circumstances: After the jury had been out for about an hour, the court recalled them for the purpose of giving additional instructions upon the question of intent. When the judge had concluded his instructions, the solicitor-general said: "Since the court has gone into an additional charge, I ask the court to charge that principle of law that criminal negligence itself may supply intent and take the place of intent." Counsel for the defendant then moved for a mistrial, because of the remarks of the solicitor. The court said: "I will overrule the motion to declare a mistrial, and I will let the jury retire. I decline to give the request asked for by the solicitor." We are of the opinion that the court's pointed refusal to comply with the solicitor's request cured any possible injury to the defendant's case from such request, and that it was not error for the court to overrule the motion.

In the 8th and last special ground a new trial is asked because of newly discovered evidence tending to prove an alibi. The gist of each of the supporting affidavits is that the witness referred to associated with reputable people, was of good character, and was

worthy of belief. None of these affidavits named any associate of the witness. This ground is not good, under the ruling in *Ivey* v. *State*, 154 *Ga.* 63 (6) (113 S. E. 175), that "An affidavit in support of the witness upon whose newly discovered evidence a new trial is sought must give the names of his associates, a statement that he keeps good company not being sufficient to meet this requirement, which is necessary to enable the prosecution to make a counter-showing; and where such affidavit does not comply with this requirement, the trial judge does not abuse his discretion by refusing to grant a new trial on this ground." See also *Tyre* v. *State*, 35 *Ga. App.* 579 (134 S. E. 178).

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*