JOHNNY LEE GREEN *v.* STATE OF INDIANA.

[No. 2-1072A72. Filed December 27, 1973. Rehearing denied February 12, 1974.]

*Frederick B. Robinson,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John McArdle,* Deputy Attorney General, for appellee.

SULLIVAN, J.—The appellant-defendant Green was found guilty of assault and battery with intent to kill after trial by the court sitting without a jury. He was committed to the custody of the Department of Corrections to be imprisoned for not less than two years nor more than fourteen years. The charging affidavit alleged that Green committed the offense "by driving his automobile at the said Carl E. Cambridge with the felonious intent then and there and thereby to kill said Carl E. Cambridge."

The sole issue presented upon appeal is the sufficiency of the evidence to establish Green's intent to kill as opposed to his admitted intent to merely escape apprehension and arrest for shoplifting. He does not assert error with respect to the admission of any evidence.

The somewhat bizarre facts disclose that Cambridge and Ronald Henry, both Marion County deputy sheriffs, were

working during their off-duty hours on December 26, 1971, at Block's department store in Lafayette Square Shopping Center in Indianapolis. About 4:30 P.M. of that day defendant, a 25 year old male dressed in women's clothing, escaped the grasp of officer Henry who had arrested him for shoplifting. Officer Cambridge, outside the store, was notified, given a description of defendant and began looking for him. Cambridge observed him on the berm of nearby West 38th Street as Green entered an automobile driven by one James Harris who had stopped to pick him up. There was no evidence that Harris and Green had any prearrangement or that they knew each other.

Deputy Cambridge and the defendant are the only witnesses who testified concerning events after defendant escaped from the store.

Cambridge's verbatim testimony, on direct examination, insofar as pertinent is as follows:

"I saw Johnny Green walking east on 38th Street. I yelled at him to stop at which time there was a white station wagon, I believe it was, it was a white car I think, it was driven by James Harris, had stopped and pulled over to the berm of the road eastbound on 38th Street thinking he was picking up a female. The car pulled over, Johnny Green ran toward the car, I was running across 38th Street trying to intercept him before he got into the car, trying to intercept her before she got into the car, as she got into the car I drew my revolver, identified myself, told her to halt, she went ahead and jumped into the car and locked all four doors, at which time Deputy Watson reached my side. I started around to the passenger side of the vehicle, at which time Johnny Green slid across the center of the front seat, the car lunged forward, the driver Mr. Harris re-applied the brakes, there was a scuffle in the front seat for the keys. Mr. Harris finally came up with them and bailed out of the car, at which time we finally got Miss Green out of the car. [When the car lunged forward] I was starting around the car, around the front of the car, figuring if I could go around to the back of the car, either way it went, she was going to try to drive off without us being there. I didn't think she would try to run over me. I went around in front of the car to keep the car from fleeing to go to the passenger side to try to get into the passenger side to get the suspect out. [When the car lunged forward, I was]"

in front of it. In the center of the car. Well, the car lunged forward striking me on the leg, knocking me off balance a little bit, I threw my hands on the hood. I still had the revolver in my hand, yelled out 'you hit me again and I kill you'."

Cambridge also testified on direct examination without objection that he later talked to defendant in jail, in response to a request from defendant:

"Mr. Green related to me at the time he was sorry he had tried to run over me with the car, he wanted a quick and speedy trial, he wanted to get it out of the way and start pulling his time as soon as he could."[1]

The only significant testimony added on cross-examination is the following:

"Q. And how far did the car lunge forward?
A. You mean in feet? I don't have any idea how far forward it lunged forward, it knocked me back three or four steps.
Q. Alright, so it moved about three or four steps, is that about right?
A. After it hit me, yes. I was probably two, maybe three feet, well the length of my arm away from the front of the car when the car lunged forward.
Q. I see, and you were able to get out of the way, is this correct?
A. I was knocked back.
Q. You were knocked back?
A. And laid up on the hood to keep from getting run over.
Q. Alright, and you were not injured in any way or were you?
A. Got some bruises but that's about it.
Q. Some bruises, alright. And then you went around to the side of the car, is this correct, after this happened?
A. Well sir, after that happened there was the scuffle in the front seat for the keys, Mr. Harris . . .
Q. You witnessed this?

---

1. It is Cambridge's reference to this statement by Green which constitutes the focal point of Judge White's dissent.

A. Yes sir, I did. There was the ⸱ . or Mr. Harris finally got the keys away from Johnny Green, he bailed out of the car at which time Dave Watson who is a Special Deputy also got him out of the car and I went back around to the drivers side of the car."

In his testimony, defendant denied that he had apologized to Officer Cambridge and said that he had told him that it was Mr. Harris who caused the car to lurch forward and that he (defendant) pressed the brake. The court obviously did not believe this testimony. Defendant did admit that he saw the officer standing in front of the car at the time the car lurched forward, and he testified that although it was not his intent to kill Cambridge, it was his "intention to get away from the officer."

We affirm the judgment below upon the issue presented for our consideration but deem it advisable in light of our colleague's dissenting opinion to consider and discuss the legal principles we hold applicable to the case at bar as opposed to certain other principles of a related nature but which are not deemed applicable.

Much is contained in the case law and treatises with respect to proof of the corpus delicti—the substance or body of the crime. The necessity for proof of the corpus delicti in the context of the facts before us presents for possible consideration two separate and distinct legal principles. The first, which we deem to be the only appropriate principle here involves the sufficiency of the evidence to prove defendant's guilt beyond a reasonable doubt. If the evidence is sufficient for such purpose, it is necessarily sufficient to establish the corpus delicti also beyond reasonable doubt. In such instances therefore, it is superfluous to view the proceedings in terms of "corpus delicti."

The second legal premise—that upon which the dissent is apparently founded and one which we deem inapplicable to the facts before us is that a conviction may not rest solely upon a confession of guilt for as stated in *Hogan* v. *State* (1956), 235 Ind. 271, 275, 132 N.E.2d 908:

"It is well established law, not only in Indiana but practically all jurisdictions where the common law prevails, that the state cannot prove the commission of a crime by the extra-judicial confession alone of a defendant. To hold otherwise runs counter to the generally accepted principles of the common law, that one may not be induced to convict himself."

To protect against such eventuality, it is generally held that a confession is not admissible in evidence unless there is independent proof of the corpus delicti. Such independent proof, however, need not be beyond a reasonable doubt. *Patton* v. *State* (1962), 242 Ind. 477, 486, 179 N.E.2d 867 somewhat apropos of the matter before us so held:

"[A]ppellant admitted to police and newsmen that he owned the car and was driving it at high speed over the course above described, prior to and at the time of the collision. However, appellant objected to the admission of testimony regarding these statements made by him on the ground that the *corpus delicti* had not been proved independent of these admissions and therefore the admission of these statements in evidence was error. Although there is no direct and positive testimony that the car, which was the subject of the above testimony, was, in fact, the appellant's, and that it was driven by him, all of the evidentiary facts which were in evidence combine to establish a logical inference which supports the ultimate facts that the car was the same and was being driven by appellant, since these ultimate facts are more logical and probable under the evidentiary facts submitted than is true of the contrary. Therefore, it was proper to admit the above testimony over the objection of the defendant."

As in the *Patton* case, the statement of Green as testified to by Deputy Cambridge is not a confession in the pure sense. It is rather an admission. A confession must be sufficiently comprehensive as to embrace all essential elements of the crime. As stated in *Wharton's Criminal Evidence* (13th ed.) § 663:

"An admission is an acknowledgment by the accused of certain facts which tend, together with other facts, to establish his guilt; while a confession is an acknowledgment

of guilt itself. An admission, then, is something less than a confession and, unlike a confession, putting to one side the problem of corroboration, an admission is not sufficient in itself to support a conviction."

The distinction was well drawn in *State* v. *Masato Karumai* (1942), 101 Utah 592, 126 P. 2d 1047 as follows:

"A confession is the admission of guilt by the defendant of all the necessary elements of the crime of which he is charged, including the necessary acts and intent. An admission merely admits some fact which connects or tends to connect the defendant with the offense but not with all the elements of the crime."

In no sense then could a conviction rest solely upon an admission. Its import is directed to less than all the essential elements of the crime, e.g., in the case at bar, to the element of intent. The danger guarded against by the evidentiary doctrine which requires corroboration of a confession is not therefore present with respect to an admission. Notwithstanding a degree of doubt as to the rationality of a rule which requires than an admission as well as a confession be inadmissible unless the corpus delicti has been proved by independent evidence,[2] many cases have so held. *See Watts* v. *State* (1950), 229 Ind. 80 at 100, 95 N.E.2d 570; *Patton* v. *State, supra,* 242 Ind. 477 at 486; *Hunt* v. *State* (1939), 216 Ind. 171 at 178, 23 N.E.2d 681; Anno. 45 A.L.R.2d 1316.

---

2. Professor Wigmore casts doubt upon the wisdom of the rule even as to confessions:

"The policy of any rule of the sort is questionable. No one doubts that the warning which it conveys is a proper one; but it is a warning which can be given with equal efficacy by counsel or (in a jurisdiction preserving the orthodox function of judges) by the judge in his charge on the facts. Common intelligence and caution, in the jurors' minds, will sufficiently appreciate it, without a laying on of the road in the shape of a rule of law. Moreover, the danger which it is supposed to guard against is greatly exaggerated in common thought. That danger lies wholly in a false confession of guilt. Such confessions, however, so far as handed down to us in the annals of our courts, have been exceedingly rare (ante, § 867). Such a rule might ordinarily, if not really needed, at least be merely superfluous. But this rule, and all such rules, are today constantly resorted to by unscrupulous counsel as mere verbal formulas with which to entrap the trial judge into an error of words in his charge to the jury. These capabilities of abuse make it often a positive obstruction to the course of justice." 7 Wigmore § 2070, p. 395.

It is important, however, to distinguish the proof of corpus delicti necessary to render an extra-judicial confession admissible as opposed to the degree of proof necessary to sustain a conviction. *Hopkins* v. *State* (1973), 156 Ind. App. 272, 296 N.E.2d 151.

The distinction observed in *Hopkins* v. *State, supra,* was detailed in *Jones* v. *State* (1969), 253 Ind. 235, 244, 252 N.E. 2d 572:

"Although the use of corpus delicti as part of the proof in a criminal case had its origin as a cautionary measure in our criminal jurisprudence, courts at times have forgotten the purpose or object of the principle. In some instances the meaning has been expanded to a point where the entire crime must be proved to make out proof of the corpus delicti, although in some instances, as in our Court, we have said that the proof need not be beyond a reasonable doubt. Whether or not any real purpose is served in giving corpus delicti a broad and expansive meaning has been a subject of considerable confusion to the courts of the various jurisdictions. Black's Law Dictionary, 4th Ed. gives a, meaning to corpus delicti which, in our opinion, is a correct one: '*Corpus delicti.* The body of a crime. The body (material substance) upon which a crime has been committed, e.g., the corpse of a murdered man, the charred remains of a house burned down. In a derivative sense, the substance or foundation of a crime; the substantial fact that a crime has been committed.'

Wigmore recognizes the confused judicial opinions in this field. Wigmore on Evidence, Third Edition, Vol. VII, § 2072, p. 401, defines corpus delicti as follows: 'The meaning of the phrase "*corpus delicti*" has been the subject of much loose judicial comment, and an apparent sanction has often been given to an unjustifiably broad meaning. It is clear that an analysis of every crime, with reference to this element of it, reveals three component parts, *first,* the *occurrence* of the specific kind of injury or loss (as, in homicide, a person deceased; in arson, a house burnt; in larceny, property missing) ; *secondly,* somebody's criminality (in contrast, e.g. to accident) as the source of the loss,—these two together involving the commission of a crime by *somebody;* and *thirdly,* the accused's *identity* as the doer of this crime.'

Wigmore than proceeds to point out that if only the first element be required to prove the corpus delicti, namely,

the mere death or the burnt house, it would be sufficient as a cautionary rule, and apparently he prefers such a limited meaning for corpus delicti. He further points out, however, that the majority of the courts require not only proof of the first element, but the added element that criminality was involved, namely, that the homicide was felonious or the burning of the house was caused by some criminal act such as arson. *He states to require the third element, namely, the identity of the accused or that he was specifically involved as part of the proof of corpus delicti, would be absurd and as a result would be synonymous with proving the whole crime, independent of any confession, and would in a sense eliminate the value of confessions.*" (Emphasis supplied) And in *Hayden* v. *State* (1964), 245 Ind. 591, 595, 199 N.E.2d 102:

"This court has stated the reason for this rule, as follows:
'The purpose of requiring the proof of the corpus delicti in a criminal case is none other than to corroborate a confession before it is admissible. . . .
'Proof of the corpus delicti should not be confused, as it sometimes is, with the recognized requirement in all cases that the state must prove beyond a reasonable doubt all the material allegations as charged. . . . Proof of the corpus delicti sufficient to corroborate a confession and make it admissible does not relieve the state of the burden of proving the crime as charged beyond a reasonable doubt. . . .' *Brown* v. *State* (1958), 239 Ind. 184, 202, 203, 154 N.E.2d 720."

As stated in *Messel* v. *State* (1911), 176 Ind. 214, at 217, 95 N.E. 565, two things are necessary to be proved beyond a reasonable doubt before one may be convicted, namely the corpus delicti—the fact that the crime charged has been committed—and the agency of the defendant in the commission of that crime. *Underhill, Criminal Evidence* (6th ed.) § 35 observes:

"It is sometimes said that corpus delicti also includes the criminal agency of the accused, but this makes the corpus delicti the same as the whole charge, and it is more accurate to say that it includes only the end result and the criminal agency of someone but not of any particular person."

In the case before us, the two factors are inseparable. Upon the evidence of record, no crime at all was committed

unless the defendant Green committed it. In this context then, the following language from the *Messel* case is given relevance:

> "The extra-judicial confession of the defendant alone is not sufficient to prove the *corpus delicti;* but such confession may be considered with independent corroborative facts, not of themselves sufficient to prove the *corpus delicti* beyond a reasonable doubt, to prove that the offense was committed." 176 Ind. at 219

The sole issue argued by appellant concerns the sufficiency of the evidence to support the conviction as to Green's intent to kill. Insofar as "corpus delicti" proof bears upon this issue, it must be shown beyond a reasonable doubt. Under the factual circumstances here presented, it is only the defendant—not the driver, Harris—who could by his intent make the act of causing the car to lurch forward criminally colorable. The appellant's contention with respect to sufficiency of evidence is therefore inextricably related to proof of "corpus delicti" as discussed by Judge White in his dissent. Under the facts here, proof that the crime charged was in fact committed by someone would support conviction of Green.

In *Parker* v. *State* (1949), 228 Ind. 1, 7, 88 N.E.2d 556, the Supreme Court said:

> "In Indiana the independent evidence alone need not be sufficient to establish the *corpus delicti* beyond a reasonable doubt, but there must be some evidence of probative value aside from the confession to prove that the crime charged was committed. When there is some independent evidence tending to prove that the crime charged has been committed by someone the confession may be considered with the independent corroborating facts in determining whether the *corpus delicti* has been established beyond a reasonable doubt. *Griffiths* v. *State, supra; Messel* v. *State, supra; Hunt* v. *State, supra.*

> "In *Griffiths* v. *State, supra,* this court said at p. 558:

> '. . . We are mindful of the rule that the extra-judicial confession of a defendant is not alone sufficient to make out the *corpus delicti,* and that as applied to a prosecution for larceny it is required that there must be proof of the

commission of the particular larceny charged. We deny, however, that such is the operation of the rule that the confession of the defendant can not in any case be used to accelerate the force or inferences concerning the fact of ownership, or that his confession can not be considered, along with the proper corroborative evidence, in determining whether the fact of the commission of the crime charged has been made out.' "

Likewise in *Hunt* v. *State* (1939), 216 Ind. 171, 178, 23 N.E.2d 681:

"Proof of the *corpus delicti* may be made by circumstantial as well as by direct evidence, but the mere extra-judicial admission or confession of the accused, uncorroborated by other evidence, will not establish the *corpus delicti*. It does not follow, however, that the corroboratory proof alone must be sufficient to establish the *corpus delicti* beyond a reasonable doubt, or that the admissions or confession of the accused, when corroborated by other evidence, may not be considered in determining if the *corpus delicti* has been established."

And in *Watts* v. *State* (1950), 229 Ind. 80, 101, 95 N.E.2d 570, the court said:

"In Indiana, the independent evidence alone need not be sufficient to establish the *corpus delicti* beyond a reasonable doubt, but there must be some evidence of probative value aside from the admissions to prove that the crime charged was committed. When there is some independent evidence, as here, tending to prove that the crime charged has been committed by some one, the admissions may be considered with independent corroborating facts in determining whether the *corpus delicti* has been established beyond a reasonable doubt."

Notwithstanding therefore, some language in Indiana cases seemingly to the contrary, the rule in Indiana, as generally elsewhere, is to the effect that while a conviction may not rest solely upon a confession of the accused and while there must be independent proof of the corpus delicti before a confession is admissible, such establishment for purposes of determining guilt beyond a reasonable doubt may be made by a consideration of such independent

evidence *together with* the confession. *See* Am.Jur.2d, Evid. §§ 530 and 1142. *See also* 127 A.L.R. 1130 at 1138, 45 A.L.R. 2d 1316 at 1327.

In the cause here considered, it is important to reiterate that defendant made no objection to the testimony of Deputy Cambridge concerning Green's statement to the effect that Green was sorry he tried to run Cambridge down. Thus, in keeping with the principles enunciated, such statement whether an admission or confession was proper to be considered together with all other evidence as determinative of Green's guilt.

We are concerned in this appeal solely with the sufficiency of the evidence to support Green's conviction and not with the admissibility of his inculpatory statement. Dispositive of this point, vis a vis the position taken in the dissenting opinion herein, is we think the following holding in *Dunbar* v. *State* (1961), 242 Ind. 161, 165, 177 N.E.2d 452.

> "Likewise, the rule requiring proof of corpus delicti, being only one of caution to prevent a defendant from being convicted solely on his own testimony (extra-judicial admissions), such proof is only a prerequisite or condition precedent to the competency of a confession. The requirements are only that it be corroborative in order to make the confession admissible and not that the proof in that respect and at that point in the trial be beyond a reasonable doubt, since the confession, if admissible, and any other evidence may be thereafter weighed and considered for that purpose. *Parker* v. *State* (1949), 228 Ind. 1, 88 N.E.2d 556, 89 N.E.2d 442; *Griffiths* v. *The State* (1904), 163 Ind. 555, 72 N.E. 563; *Jackson* v. *State* (1958), 238 Ind. 365, 151 N.E.2d 141; *Schuble* v. *State* (1948), 226 Ind. 229, 79 N.E.2d 647; *Hogan* v. *State* (1956), 235 Ind. 271, 132 N.E.2d 908." *See also Shively* v. *State* (1957), 237 Ind. 17 at 19, 141 N.E.2d 921.

Whether we consider the matter before us in terms of "corpus delicti" or more properly in terms of proof of guilt beyond reasonable doubt, it is clear that the evidence sufficient to establish such proof may be circumstantial. *Burton* v. *State* (1973), 260 Ind. 94, 292

N.E.2d 790; *Brown* v. *State* (1958), 239 Ind. 184, 154 N.E. 2d 720.

The circumstances surrounding the operation of a motor vehicle may give rise to a conviction for assault and battery with intent to kill. Facts not wholly dissimilar from those here presented resulted in affirmance of a conviction for assault with intent to commit murder in *Ester* v. *State* (1964), 214 Tenn. 484, 381 S.W.2d 283. There police officers attempted to stop a vehicle in which defendants were illegally transporting whiskey. The officers' testimony showed that a deliberate attempt was made to run them down. The Tennessee Supreme Court affirmed the conviction relying upon *Love* v. *Bass* (1922), 145 Tenn. 522, 238 S.W. 94 which held that an attempt by a "whiskey runner" to run down a sheriff with an automobile was an assault with intent to murder. To the same effect is *Sudan* v. *State* (1930), 41 Ga. 828, 155 S.E. 102.

It thus appears that the meagre authority available in other jurisdictions supports conviction for assault and battery with intent to kill even though the intent exemplified by the actor, as here, is indicative of an intent to escape apprehension and arrest rather than a specific intent to actually kill the person or persons obstructing the escape path.

An even stronger case than that before us is *Dennard* v. *State* (1914), 14 Ga.App. 485, 81 S.E. 378 wherein a conviction of assault with intent to murder was affirmed even though it was not shown that the defendant had any ill-feeling toward the person alleged to have been assaulted, no reason appeared why defendant should have wished to run him down and no apparent explanation for his conduct unless actuated by a reckless disregard of human life. The Georgia Court held that the questions to be determined were solely factual and within the prerogative of the jury. The court said:

"... we are not prepared to hold that [the trial judge] committed reversible error in [approving the verdict]."[3]

___

3. *Compare State* v. *Richardson* (1917), 179 Ia. 770, 162 N.W. 28, to the contrary wherein defendant was unaware of the presence of the

We believe a like holding is required here—that the existence of the specific intent to kill on the part of Green was a question of fact for resolution by the trial court sitting without a jury. While we might have concluded otherwise, we cannot state as a matter of law that the trial court's assessment of the evidence was without reasonable foundation.

For there to have been a criminal offense, the instrumentality causing injury to the police officer here, i.e., the car, must have been put into motion by someone acting with criminal intent. Since the evidence is wholly devoid of any inference that Harris, the driver had any such intent or motivation, the "corpus delicti" insofar as it requires establishment of a criminal act, must incorporate as the initiator of that act, the defendant himself.

Appellant would have us reverse his conviction upon the ground that it was his intent merely to escape from the officers seeking his apprehension and arrest rather than to kill Deputy Sheriff Cambridge. The contention is of no avail to him. Even were we to accept as true that his actual intent was merely to escape, the conviction must be affirmed. Such intent existed when Green entered Harris' car. Deputy Cambridge standing in front of the car in full view blocked that escape. It was therefore not inappropriate for the trier of fact to reasonably infer that Green intended to eliminate the obstacle to his escape even if that human obstacle was killed in the process.

Green's in-court testimony concerning his intention to avoid arrest carries with it, in view of the evidentiary circumstances even exclusive of his extra-judicial statement, a permissible inference that such intent was demonstrated by an effort on Green's part to put the car in motion. Were it otherwise, he would have no reason to give voice to an explanation of his intent.

---

person struck. The Iowa decision, however, turned upon the court's instructions to the jury and the court held that whether defendant had the actual specific intent was a question of fact for the jury.

Judgment affirmed.

Buchanan, P.J., concurs; White, J., dissents with opinion.

## DISSENTING OPINION

WHITE, J.—If defendant's extrajudicial admission is eliminated from the evidence it contains no testimony which expressly states what act or whose act, caused the car to strike Mr. Cambridge, nor is there any evidence from which the identity of the act or of the actor can reasonably be inferred. All that the independent evidence shows is that (with Mr. Harris behind the wheel) the car drove onto the berm and stopped, defendant got in, locked the door, scooted over to the center of the car, the car lurched forward and struck Mr. Cambridge, and Mr. Harris reapplied the brake.[1] Defendant saw Cambridge in front of the car but there is nothing to indicate whether the driver did. There is nothing to indicate whether the car lurched forward because the brake was released, or because the gear lever was moved from "park" or "neutral" to "drive", or because pressure was applied to the accelerator, or because a clutch was released, or because of any of a number of other possible causes (depending partly on whether the car was equipped with an automatic or a standard transmission). In short, there is nothing but defendant's extrajudicial admission (that he had tried to run over Cambridge with the car) from which it can be reasonably inferred that the forward lurch of the car was the product of a criminal act or even an intentional act. Which is to say that there is no independent evidence that the injury to Cambridge was a battery *someone* had committed. Had there been such independent evidence which, however, did not identify the actor who committed

---

1. That Harris reapplied the brake is something Cambridge could not have known from his own observation. He testified that he had a conversation with Harris after the incident. When defendant's attorney learned from Cambridge that the conversation was in defendant's presence he made no attempt to learn whether defendant's reaction was such as to make such hearsay admissible as an implied admission, and did not object.

the battery, defendant's admission would have been sufficient to supply that omission. In other words, an extrajudicial confession or omission can be the sole proof of *who* committed the crime, but not the sole proof that a crime was committed. Since nothing but defendant's admission supplies the otherwise missing evidence of criminality as the cause of the injury, the judgment should be reversed.

At the outset, it must be understood that the distinction between an extrajudicial admission and an extrajudicial confession has no bearing on the thesis of this dissent. A succinct explanation found in an annotation, 45 A.L.R.2d 1316, 1323, n. 16, follows:

> "An admission, as distinguished from a confession, does not cover all the elements of the crime charged. . . . Hence an admission does not support a conviction, even where all the facts stated in the admission are corroborated. What the rule that an uncorroborated admission does not support a conviction really means is that the admission without corroboration is not sufficient evidence of the facts admitted."

That annotation cites cases from fifeeen jurisdictions in support of its statement that

> "As a general proposition, an accused's admission of incriminating facts not amounting to a confession, if uncorroborated by any other evidence, is not sufficient to sustain a conviction."

Among those cases is *Opper* v. *United States* (1954), 348 U.S. 84, 99 L.Ed. 101, 75 S.Ct. 158, 45 A.L.R.2d 1308. Though it lays down a rule for corroboration which is quite different from that which Indiana and most jurisdictions follow, it contains a good statement of the reason for treating extrajudicial admissions[2] as confessions with respect to corroboration and proof of the *corpus delicti*:

---

2. At all times herein when we speak of "admissions" we speak of extrajudicial admissions made *after* the occurrence of the incident charged as a crime. *Opper* notes that *Warszower* v. *United States*, 312 U.S. 342, 348, 85 L.Ed. 876, 880, 61 S.Ct. 603, held that admissions made prior to the crime charged "contain none of the inherent weaknesses of confessions or admissions after the fact" and therefore are sufficient to prove an essential element of the crime, without corroboration or other evidence of that element.

"We think that an accused's admissions of essential facts or elements of the crime, subsequent to the crime, are of the same character as confessions and that corroboration should be required. See 1 Greenleaf, Evidence (16th ed) § 216; Smith v. United States, 348 U.S. 147, 99 L.Ed. 192, 75 S.Ct. 194.

"The need for corroboration extends beyond complete and conscious admission of guilt—a strict confession. Facts admitted that are immaterial as to guilt or innocence need no discussion. But statements of the accused out of court that show essential elements of the crime, here payment of money, necessary to supplement an otherwise inadequate basis for a verdict of conviction, stand differently. Such admissions have the same possibilities for error as confessions. They, too, must be corroborated. See Wilson v. United States, 162 U.S. 613, 621, 40 L.Ed. 1090, 1095, 16 S.Ct. 895."

*Opper* also contains an interesting analysis of the three different rules of corroboration then followed in the various federal circuits.

"One line of cases follows the rule set out in Daeche v. United States (CA2d N.Y.) 250 F. 566, that the corroborative evidence is sufficient if it touches the corpus delicti 'in the sense of the injury against whose occurrence the law is directed,' 250 F. at 571, and is of a type which goes to fortify the truthfulness of the confession. Some cases would seem only to require the latter half of the Daeche rule; that is, proof of any corroborating circumstances is adequate which goes to fortify the truth of the confession or tends to prove facts embraced in the confession. There is no necessity that such proof touch the corpus delicti at all, though, of course, the facts of the admission plus the corroborating evidence must establish all elements of the crime.

"Other decisions tend to follow the rule enunciated in Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, 240, 244, 127 A.L.R. 1120, that the corroboration must consist of substantial evidence, independent of the accused's extrajudicial statements, which tends to establish the whole of the corpus delicti." (45 A.L.R.2d at 1314, notes omitted.)

The rule adopted for the federal courts by *Opper* is:

"However, we think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti. It is necessary,

therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. Smith v. United States, 348 U.S. 147, 99 L.Ed. 192, 75 S.Ct. 194. It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt."

In *Jones* v. *State*[3] (1969), 253 Ind. 235, 248, 252 N.E.2d 572, Chief Justice Arterburn's majority opinion discusses the *Opper* rule as set forth in *Landsdown* v. *United States* (5th Cir., 1965), 348 F.2d 405, and rejects it with these words:

"We are not inclined however at this time to go as far as the Federal courts have in their lenient interpretation of what constitutes sufficient corroborating evidence to establish the admissibility of a confession. The majority rule, as we noted previously from *Brown* v. *State* (1958), 239 Ind. 184, 154 N.E.2d 720, seems to us to be the better and more rational principle to follow. It does not mean that a prima facie case with all of the elements of the crime charged has to be proved."

In *Brown* Chief Justice Arterburn had said:

"The confession of the appellant, if competent evidence, amply sustains the verdict; but because of the extremity of the penalty inflicted we are constrained to review the evidence particularly as to whether or not the extrajudicial confession is adequately corroborated by independent evidence. The rule requiring proof of the corpus delicti of a crime has its origin and basis in the hesitancy of the law to accept without adequate corroboration, the confession of a defendant (extrajudicial) unless it be one made in open court—as a plea of guilty. Corpus delicti has been defined as 'The body of a crime . . . In a derivative sense, the substance or foundation of a crime; the substantial fact that

3. The majority opinion also quotes extensively from *Jones, ante,* p. 75. Included therein is a statement to the effect that Wigmore believes that proof of injury alone (as that a house burned) should be sufficient proof of the *corpus delicti,* but that the majority rule requires the added element that criminality was involved.

a crime has been committed.' Black's Law Dictionary, 4th Ed., p. 413.

> 'In Indiana the independent evidence alone need not be sufficient to establish the *corpus delicti* beyond a reasonable doubt, but there must be some evidence of probative value aside from the confession to prove that the crime charged was committed.' *Parker* v. *State* (1949), 228 Ind. 1, 7, 88 N.E.2d 556, 89 N.E.2d 442.

> "A dead body alone is not proof of the corpus delicti in a homicide case; but an identified dead body with marks of violence thereon or surrounding circumstances that would indicate the deceased did not die from natural causes establishes prima facie that a homicide has been committed and the corpus delicti. *Wahl* v. *State* (1951), 229 Ind. 521, 98 N.E.2d 671; *Hunt* v. *State* (1939), 216 Ind. 171, 23 N.E.2d 681; *Commonwealth* v. *Lettrich* (1943), 346 Pa. 497, 31 A.2d 155; *McVeigh* v. *State*, 205 Ga. 326, 53 S.E.2d 462; *Osborn* v. *State,* 86 Okla. Crim. 259, 194 Pac. 2d 176.

> "Likewise, the corpus delicti in an arson case is not established by the burning of a building alone, but additional independent evidence is necessary to show it was intentionally set afire in violation of the law. *Simmons* v. *State* (1955), 234 Ind. 489, 129 N.E.2d 121.

> "In other words, the independent evidence must be of such a character that reasonable inferences may be drawn to support a conclusion that a crime of the nature and character charged has been committed by someone." (239 Ind. at 190.)

*Jones* v. *State, supra,* 253 Ind. at 249, stated the Indiana rule on sufficiency of the evidence to show *corpus delicti* thus:

> "From an extensive review of the authorities as to the quantum of evidence necessary to prove the corpus delicti in this state, we hold that it is not necessary to make out a prima facie case as to each element of the crime charged nor is it necessary to prove each element of the crime charged beyond a reasonable doubt before a confession is admissible. We further hold that the traditional definition of corpus delicti, as heretofore quoted from Black's Dictionary, namely, that the body (material substance) upon which a crime has been committed, i.e., the corpse of a murdered man or *the charred remains of a burnt house,* for example, *plus independent evidence from which an inference may be drawn that a crime was committed* in connection therewith, is sufficient to show the corpus delicti.

Our rule is stricter than that held by the Federal courts and some state courts, as shown above, since *in this state we require evidence of criminality in connection with the incident."* (My emphasis.)

The Indiana rule that confessions and admissions must be corroborated by independent evidence sufficient to make *prima facie* proof of the *corpus delicti* is stated in *Jones* in terms of admissibility because that was the procedural manner in which the question arose. Perhaps in most cases the issue originates in that same manner: An objection is made when a written confession or admission is offered into evidence or when a question is asked which seeks to elicit testimony of an oral admission or confession. That, however, is not the only manner in which the issue can arise. *Parker* v. *State* (1949), 228 Ind. 1, 88 N.E.2d 556, 89 N.E.2d 442, is one illustration. The concluding portion of the initial opinion stated:

> "We hold that there was no evidence of the *corpus delicti* in this case of any probative force, except the confessions and admissions of the accused, and, therefore, the evidence was insufficient and the case must be reversed.

> "In view of our conclusion, it is not necessary to determine whether there was error in admitting the confession, or in other respects urged by appellant." (Id. at 11.)

In a clarifying opinion overruling the State's petition for rehearing, the court said:

> "We said that an extrajudicial confession will not be admitted in evidence and a conviction will not be upheld until and unless the *corpus delicti* has been established by clear proof, independent of the confession. . . ." (Id. at 11.)

> "The literal meaning of the language which we used may, out of context, seem to be that the independent, corroborative evidence of the *corpus delicti* must precede the confession. We did not have before us, however, the question of order of proof; *we were considering the necessity for such proof to uphold a conviction.* . . . (Id. at 12. My emphasis.)

Another case in point is *Gaines* v. *State* (1921), 191 Ind. 262, 132 N.E. 580, is one in which it appears that there was no objection to the testimony of the several witnesses who

testified to defendant's oral confession. The issue arose on defendant's motion for new trial in which "it is contended by appellant that the verdict of the jury is not sustained by sufficient evidence and is contrary to law." (Id. at 264.) In reversing the conviction the court said:

> "If the 'confession' of the appellant is eliminated from the evidence there is no evidence at all tending to show that any burglary was committed. The verdict is therefore not supported by the evidence, in one of the essential elements of the offense and is not according to law." (Id. at 269).

In the case at bar, if the admission of the defendant is eliminated from the evidence there is *some* evidence tending to show that an assault and battery was committed. There is evidence of an injury; evidence that an automobile struck a man. That is sufficient *prima facie* proof of the first element of the *corpus delicti:* Injury. But there is no evidence of the second element: That *someone* is criminally responsible for the injury. There is NO evidence of what caused the car to strike the man.

There is an almost perfect analogy between arson and assault and battery by automobile. In both *Williams* v. *State* (1930), 90 Ind. App. 667, 169 N.E. 698, and *Simmons* v. *State* (1955), 234 Ind. 489, 129 N.E.2d 121, the only evidence that arson had been committed, exclusive of defendant's extra-judicial confession, was that property had burned. Both convictions were reversed. In *Simmons* the court said:

> "In arson, the *corpus delicti* is not proved by mere proof that property burned. 'The law implies that the fire was the result of accident or some providential cause, rather than a criminal design, unless the evidence proves otherwise. *Phillips* v. *State* (1859), 29 Ga. 105; *Stallings* v. *State* (1872), 47 Ga. 572; *State* v. *Carrol* (1892), 85 Iowa 1, 51 N.W. 1159.' *Williams* v. *State* (1930), 90 Ind. App. 667, 677, 169 N.E. 698." (Id. at 493.)

While it is probable that no case has ever held that the law implies that the unexplained forward lurch of a standing

automobile is presumed to be accidental, certainly no one has ever held that it is presumed to be criminal. In *Shorter* v. *State* (1954), 234 Ind. 1, 9, 122 N.E.2d 847, the court said: "The mere probability that appellant may have driven his automobile against that of another heedlessly, and with reckless disregard for the safety, property and rights of others, will not sustain an inference upon which such possibility can be established as a fact."

That the forward lurch of the automobile and its striking Officer Cambridge is not *prima facie* proof that battery was committed by someone is tacitly conceded by the majority in the statement that "no crime at all was committed unless the defendant Green committed it." That statement says, by implication, that if Harris (the driver) caused the lurch it was accidental, but if Green caused it, it was with intent to batter, or to kill, Cambridge. The ultimate implication is that those implied facts make it proper for the State to prove that the criminal agency element of the *corpus delicti* by defendant's admission. Were that true it would be proper to prove the criminal agency in a fire by the admission or confession of the accused arsonist.

Defendant's motion to correct errors, drafted by his court appointed trial counsel, was on the sole ground that the court's decision "is not supported by sufficient evidence on all elements". However, his statement, pursuant to Trial Rule 59(B), "of the facts and grounds upon which the errors are based" is directed solely to the question whether the evidence was sufficient to imply intent to injure or kill. It made no contention that it was insufficient because it rested in any part upon defendant's extrajudicial admission.[4] Defendant's court appointed appeal counsel (not his trial attor-

4. An interesting sidelight of this case is the possibility that the transcript of Officer Cambridge's testimony may have omitted a statement made by him. The memorandum appended to the motion to correct errors asserts that the officer testified that defendant stepped on the accelerator. If he did so testify, it would not be from his own observation but from hearsay which was admissible only on the theory that it was an extrajudicial admission by the defendant. See note 1, *ante*.

ney) nevertheless made this statement in his argument that the evidence was insufficient:

> "There was no evidence presented to actually prove the Appellant caused the car to lunge forward to strike the deputy sheriff. Cambridge did not actually testify that he saw the Appellant cause the car to lunge forward and hit him. During the course of the scuffle, one or both of the individuals could have touched the car's accelerator pedal and caused it to jump forward. Deputy Cambridge's testimony was based merely on conjecture and supposition; he could not have seen who actually struck the accelerator pedal. Then too, in the course of the struggle, it can be surmised that if, indeed, the Appellant had struck the accelerator, such action was truly accidental and not done with intent to kill Deputy Cambridge."

On first blush the premise of that argument, that there is no probative evidence that defendant caused the car's lunge, appears fallacious and misleading in that it ignores defendant's jailhouse admission that he tried to run over Cambridge. On second thought, however, one realizes that such an admission cannot be the sole evidence of any essential element of the *corpus delicti*. Thus by indirection, by what it fails to say, this argument is an argument that the State failed to make *prima facie* proof of the *corpus delicti* by evidence independent of defendant's extrajudicial admission. But because of its ambiguous suggestion that there was some testimony that defendant had depressed the accelerator, it is a weak argument. But a careful reading of the transcript of the evidence fails to reveal any such testimony.[5] There is no

---

5. The possibility of inadvertent omission exists in every transcript and record. We must assume, however, that every transcript and record certified to us is correct. *Board of Commissioners of Marion County* v. *Center Township* (1886), 105 Ind. 422, 443-444, 7 N.E. 189, 190.

And if we decide an appeal on an inadvertently incomplete record, the decision is nevertheless final. *Davidson* v. *Davidson* (1950), 120 Ind. App. 253, 256, 91 N.E.2d 796, 797; *Utterback* v. *State* (1973), Ind. App., 302 N.E.2d 514, 39 Ind. Dec. 260.

Furthermore, as previously noted (nn. 1 and 4) if Cambridge did so testify his information was hearsay, admissible only on the theory that it became an admission because stated by driver Harris in defendant's presence. The rule is stated in *Diamond* v. *State* (1924), 195 Ind. 285, 291, 144 N.E. 466:

evidence, save defendant's admission, to show what caused the car's lunge forward was criminally caused.

In my view, any conviction which rests solely on defendant's confession or admission as to any essential element of the *corpus delicti* is so fundamentally erroneous that it should be reversed, even though we raise the issue *sua sponte* after defendant's court appointed trial counsel has technically

---

"Where a charge is made in the presence and hearing of a person accusing him of a crime his silence, or failure to contradict or explain the statement, may be shown, as being in the nature of an admission of the truth of such statements, providing the circumstances are such as to afford him an opportunity to speak and such as would naturally call for some action or reply from persons similarly situated."

We are not concerned with whether the hearsay to which Officer Cambridge *may have* testified to was admissible. I discuss it only to speculate whether, *if* he did testify to it and *if* it were in the record, it would constitute *independent* evidence that the automobile's striking Cambridge was the result of a criminal act. That he could not, from his own observation, have known whether Green stepped on the accelerator and Harris stepped on the brake is so obvious that it irrefutably implies that he obtained such knowledge either by guess or by hearsay. That it came from hearsay which Green's court appointed attorney thought was admissible because said in Green's presence is demonstrated by the following preliminary questions and answers elicited by the attorney with the courts permission, preliminary to a motion to strike which was never made:

"Q. Does your information as to what happened inside the car depend on the conversation with the driver?

"A. Does it depend on the conversation?

"Q. Yes.

"A. What do you mean, does it depend on the conversation, I'm standing there watching it.

"Q. Alright, now answer the question does the conversation

"A. I don't know what you mean.

"Q. Alright, for instance does it depend, your answer that Johnny Lee Green knew the driver of the car or not, would this depend on the conversation with the driver?

"A. That answer was given to me in front of Johnny Green by Mr. Harris."

Thereupon preliminary questioning was terminated and the State's direct examination resumed with this:

"Q. Yes. Do you know if Johnny Lee Green knew the driver of the automobile that stopped for him?

"A. According to Johnny Green in the Security Office of Wm. H. Block Co. which is located in the North-east corner . . .

"Q. Would you just answer the question again?

"A. That's what I'm getting to. He was there, Mr. Harris was there and he said he didn't know him."

waived the error. *Fisher* v. *United States* (1946), 328 U.S. 463, 467-8; *Wiborg* v. *United States* (1896), 163 U.S. 632; Vestal, *Sua Sponte Consideration in Appellate Review,* 27 Fordham L.R. 477, 503, 506; Wright, 3 FED. PRAC. & PROC. 372, § 856; *Sanford* v. *State* (1971), 255 Ind. 542, 544, 265 N.E.2d 701; *Summers* v. *State* (1967), 248 Ind. 551, 230 N.E.2d 320, 11 Ind. Dec. 351.

NOTE.—Reported at 304 N.E.2d 845.