## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 27 2017, 9:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean P. Hilgendorf
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert A. Johnson, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 27, 2017

Court of Appeals Case No.
71A04-1702-CR-298

Appeal from the St. Joseph Superior Court

The Honorable Elizabeth C. Hurley, Judge

Trial Court Cause No.
71D08-1604-F6-363

**Mathias, Judge.**

[1]     Robert A. Johnson, Jr. ("Johnson") was convicted in St. Joseph Superior Court of Level 6 felony battery against a public safety officer, Level 6 felony resisting

law enforcement, and Class B misdemeanor criminal recklessness. Johnson appeals, claiming that the State presented insufficient evidence to support his convictions. We affirm.

## Facts and Procedural History

On the evening of March 7, 2016, Officer Terry Beck ("Officer Beck") of the St. Joseph County Police Department was informed that Johnson had an active warrant for his arrest and was instructed to keep an eye out for Johnson while on patrol. Later that night, Officer Beck saw what he believed to be Johnson's car parked at Johnson's mother's house. Officer Beck radioed for assistance, and Corporal Nicholas Johnson ("Corporal Johnson")[1] arrived on the scene.

Unsure of whether the car belonged to Johnson, the two police officers kept watch on the vehicle from behind a nearby fence. At some point thereafter, Johnson came out of his mother's house and got into the car. The officers were then able to identify Johnson and came out from behind the fence to approach the car. Corporal Johnson went up to the driver's side of the car, and Officer Beck went to the passenger seat. The area was lighted by a light on a telephone pole, and the headlights on Johnson's car were on. Additionally, the police officers had flashlights that they turned on as they approached the car. Both officers shined their lights into the car. Johnson looked at both officers, who were wearing their patrol uniforms. Upon seeing the officers, Johnson

---

[1] There is no indication in the record that Corporal Johnson is related to the defendant.

immediately put the car in reverse and quickly began to back the car away from the police. Both officers loudly commanded Johnson to stop and identified themselves as police officers. Officer Beck hit the hood of Johnson's car with his flashlight to get Johnson's attention. As Johnson pulled the car back, the car bumped into Officer Beck at least twice. Johnson then put his car into drive and drove straight at Corporal Johnson, who had to move out of the way to avoid the car. Still, as Johnson drove by, the car struck Corporal Johnson on his left hip. Johnson then sped away from his mother's home. The two officers attempted to chase down Johnson in their patrol cars but were unable to apprehend him at the time.

[4] In the meantime, Officer Joshua Harmon ("Officer Harmon") arrived on the scene and spoke with Johnson's mother, Jean Reinhart ("Reinhart"). Reinhart called her son on his mobile phone and allowed Officer Harmon to speak with him. At first, Johnson told Officer Harmon that he had not been at his mother's house that night. When Officer Harmon told Johnson that his mother had confirmed that he was, in fact, at her house that night, Johnson admitted that he had been there, but claimed that he fled because he did not recognize the officers as police and thought someone was attempting to rob him. Later, however, Johnson told Officer Harmon that he knew the people at his mother's house were police officers and that he had fled because he knew he had active warrant for his arrest and did not want to go to jail. Johnson, however, did not return to his mother's house that night and was apprehended later.

On April 21, 2016, the State charged Johnson with four counts: Count I, Level 6 felony battery against a public safety officer (Officer Beck); Count II, Level 6 felony battery against a public safety officer (Corporal Johnson); Count III, Level 6 felony resisting law enforcement by fleeing in a vehicle; and Count IV, Class B misdemeanor criminal recklessness. A two-day jury trial commenced on December 19, 2016. At the conclusion of the trial, the jury found Johnson not guilty on Count I but guilty on the remaining counts. On February 2, 2017, the trial court sentenced Johnson to concurrent terms of 18 months on both Level 6 felony convictions and "merged" the Class B misdemeanor conviction with the resisting law enforcement conviction for sentencing purposes. Johnson now appeals.

## Standard of Review

When reviewing a claim of insufficient evidence to sustain a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Meehan v. State*, 7 N.E.3d 255, 257 (Ind. 2014). It is the jury's role, not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id*. A reasonable inference of guilt must be more than a mere suspicion, conjecture, conclusion, guess, opportunity, or scintilla. *Id*.

# Discussion and Decision

[7] Johnson challenges the sufficiency of the evidence supporting all of his convictions. We address each in turn.

## A. Battery Against a Public Safety Officer

With regard to the evidence supporting his conviction for battery against Corporal Johnson, the State was required to prove beyond a reasonable doubt that Johnson knowingly or intentionally touched Corporal Johnson in a rude, insolent, or angry manner and that Corporal Johnson was a public safety officer engaged in his official duties. Ind. Code § 35-42-2-1(b)(1), (d)(2).[2] "'A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so," and "[a] person engages in conduct 'knowingly,' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(a), (b).

[8] Johnson argues that there was insufficient evidence to show that his car actually struck Corporal Johnson.[3] In support of his argument, he refers to the testimony

---

[2] Johnson makes no argument that Corporal Johnson was not a public safety officer engaged in his official duties, nor would any such argument be successful, as the evidence clearly showed that Corporal Johnson was an officer of the St. Joseph County Police Department and was on duty when he attempted to apprehend Johnson. *See* Ind. Code § 35-42-2-1(a)(1) (defining a "public safety officer" to include a "law enforcement officer").

[3] It has long been settled that battery may be committed by hitting another with an automobile. *Schneider v. State*, 181 Ind. 218, 104 N.E. 69, 69 (1914) (citing *Luther v. State*, 177 Ind. 619, 624, 98 N.E. 640, 641-42 (1912)); *see also Matthews v. State*, 476 N.E.2d 847, 850 (Ind. 1985) (noting that defendant need not personally touch another person because battery may be committed by the unlawful touching by defendant or by any other substance put in motion by defendant).

of Officer Beck, who testified that Johnson "almost" hit Corporal Johnson when he backed away in his car. He notes that Corporal Johnson testified the car struck him as he swung his flashlight at the car. Johnson argues that Officer Beck's testimony contradicts Corporal Johnson's testimony. However, any inconsistency between the testimony of Corporal Johnson and Officer Beck was for the jury to resolve. *See Jordan v. State*, 656 N.E.2d 816, 818 (Ind. 1995) ("Inconsistencies go to the weight and credibility of the testimony, the resolution of which is within the province of the trier of fact.").

[9]     Johnson also argues that the physics of the situation, with Corporal Johnson on the driver's side of the car, makes it "impossible" for there to have been anything other than "incidental" contact between Johnson's car and Corporal Johnson. He argues that the *mens rea* element is absent because Corporal Johnson's own testimony shows that he was swinging his flashlight at the car when it struck him. We disagree.

[10]    The evidence favoring the jury's verdict includes Corporal Johnson's testimony that Johnson's car struck him in the hip as it pulled forward after having first backed up. Indeed, after Johnson backed the car up, Corporal Johnson was at first directly in front of the car and had to quickly move out of the way to avoid being directly struck as Johnson sped away. Despite Corporal Johnson's evasive acts, Johnson's car struck his left hip. Moreover, there was evidence that Johnson saw the police officers, who were in full uniform, recognized that they were police officers, and fled because he did not want to be arrested and go to jail.

Johnson's action of driving his car directly at Corporal Johnson in an attempt to flee the officers is sufficient to show that he knowingly used his car to touch Corporal Johnson in a rude, insolent, or angry manner. *See Beach v. State*, 512 N.E.2d 440, 445 (Ind. Ct. App. 1987) (holding that evidence was sufficient to support defendant's conviction for attempted battery where he drove his car on the sidewalk, nearly striking several people); *Green v. State*, 159 Ind. App. 68, 81, 304 N.E.2d 845, 853 (1973) (holding that evidence was sufficient to support conviction for battery where defendant drove his car at deputy attempting to block his escape, striking the deputy in the leg).

## B. Resisting Law Enforcement

Johnson next argues that the State failed to prove that he resisted law enforcement. A person who "knowingly or intentionally . . . flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop," commits resisting law enforcement as a Class A misdemeanor. Ind. Code § 35-44.1-3-1(a)(3) (2014). The offense is elevated to a Level 6 felony if "the person uses a vehicle to commit the offense." *Id.* at § 1(b)(1)(A).

Johnson again contends that there was inconsistent testimony with regard to what the officers said and did to show that they were in fact police officers. Again, this is irrelevant to our review. *Jordan*, 656 N.E.2d at 818. Although Officer Beck testified that he did not have time to announce himself as an officer before Johnson began to back his car up and further testified that he

could not recall if he told Johnson to stop, Corporal Johnson unequivocally testified that he and Officer Beck yelled at Johnson and announced themselves as police officers. Both officers were dressed in uniform, and both testified that Johnson looked directly at them. Corporal Johnson also testified that he told Johnson to stop several times to no avail. Officer Harmon testified that, during his telephone conversation with Johnson, Johnson admitted that he knew that it was the police who approached his car and fled because he knew that he had a warrant for his arrest and did not want to go to jail. From this evidence, the jury could reasonably conclude that Johnson knowingly fled from the police, using a vehicle, after the police identified themselves by visual and audible means and ordered Johnson to stop.

## C. Criminal Recklessness

[14] "A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness." Ind. Code § 35-42-2-2(a). Johnson's argument regarding the sufficiency of the evidence to convict him for criminal recklessness is that a finding of guilt for criminal recklessness is inconsistent with the jury's act of acquitting him of battery against Officer Beck.

[15] However, our supreme court has explicitly held that, in criminal cases, jury verdicts "'are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable.'" *McWhorter v. State*, 993 N.E.2d 1141, 1146 (Ind. 2013) (quoting *Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010)). Instead, we tolerate such verdicts, acknowledging that they conceivably

could be "'due to a compromise among disagreeing jurors, or to expeditiously conclude a lengthy deliberation, or to avoid an all-or-nothing verdict, or for other reasons.'" *Id*. (quoting *Beattie*, 924 N.E.2d at 649).

[16] Accordingly, the fact that the jury acquitted Johnson of battering Officer Beck is immaterial to the question of whether there was sufficient evidence to find him guilty of criminal recklessness in his conduct toward both officers. Furthermore, the jury could reasonably conclude that, by driving a car straight at a police officer attempting to effectuate an arrest, causing the officer to have to quickly move out of the way of the approaching car, Johnson recklessly performed an act that created a substantial risk of bodily injury to Corporal Johnson.

## Conclusion

[17] Considering only the evidence favorable to the jury's verdicts, we conclude that the State presented evidence sufficient to support Johnson's convictions.

[18] Affirmed.

Kirsch, J., and Altice, J., concur.