THOMAS DAVIS *v.* STATE OF INDIANA.

[No. 570S116. Filed August 9, 1971. Rehearing denied October 12, 1971.]

*Bruce E. Bloom,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—Appellant was charged with the crime of first degree murder and pleaded not guilty by reason of insanity and also entered a plea of not guilty. The jury returned a verdict of guilty of murder in the second degree. Judgment was entered thereon and the appellant was sentenced to life imprisonment in the Indiana State Prison.

On February 17, 1969, appellant went to the home of one Otis Humphries in Fort Wayne, Indiana. The two men argued over the vandalizing of a car. During the argument the appellant pulled a pistol from his pocket and shot Otis Humphries. The shooting was witnessed by Miss Frances Sewell, who testified that she saw the appellant shoot the deceased victim.

Appellant first contends that prejudicial error occurred as a result of the testimony of Police Officer O'Leary, who investigated the shooting. Officer O'Leary testified in rebuttal, as to statements made by the appellant about the shooting, after the appellant had taken the stand in his defense.

In the course of direct and cross-examination of the appellant, he testified that he could not remember much of the events of the evening of the shooting. Specifically, the appellant gave the following responses to questions asked by the appellant's counsel on his direct examination.

"Q. Do you remember going to Otis Humphries' house?

"A. No.

\* \* \*

"Q. Do you remember being outside Otis Humphries' house that day?

"A. No.

"Q. Do you remember arguing with Otis Humphries?

"A. No.

"Q. What is your first memory?

"A. The only thing that I can remember during that night is, Otis was in his house and I remember him going into his bedroom and coming back out, and after then, Francine was standing up there by me, and she started hollering, 'no, no, don't shoot.' Then, she shook like that and I saw Otis laying on the floor . . ."

\* \* \*

"Q. Do you remember shooting Otis?

"A. No I don't. I don't even remember hearing the gun going off."

On cross-examination the appellant gave the following responses to questions asked by the prosecuting attorney.

"Q. You said you remember some things. What things do you remember?

"A. This was what I thought you was talking about before.

"Q. No. I'm talking about the night of February the 17th, 1969 at Otis' apartment.

"A. I don't remember anything.

"Q. Not a thing?

"A. No, only thing I can remember that night after I got there, I guess we was arguing but I don't remember anything that we was arguing about, and Francine was standing there beside me and she grabbed me by the arm and say, Tom, don't, but I don't remember, when I looked up Otis was laying on the ground, so, on the floor, so I walked out . . ."

The appellant further testified that the witness, Miss Sewell told him that he had killed or shot Otis Humphries. He also stated that he remembered the squad car coming and getting

into it and being taken to the police station, but remembered no conversation in the squad car with any policeman.

On rebuttal, the state put Police Detective Sergeant John O'Leary on the stand to rebut the testimony of the appellant regarding the allegation that he could remember nothing of the events of the evening or the shooting. Officer O'Leary testified that he read the appellant's constitutional rights to him from a standard card. After reading the constitutional rights to the appellant Officer O'Leary testified that the appellant ". . . said that he would be willing to talk, but that he would also like to notify his attorney." Officer O'Leary, nevertheless, questioned the appellant. On direct examination officer O'Leary gave the following testimony in part.

"Q. Now, Sgt. O'Leary, would you tell the Court and the jury, if you will, what was said by you and what you said by the defendant, as you started to do?

"A. I asked Mr. Davis if he could tell me anything of the shooting in the house at 2130 South Lafayette. And, his reply was, 'Yes, I shot him.'

"Q. Was there anything else said?

"A. At this time I asked him if he had been in the house and he said, yes. He told me Otis Humphries had called him over. At this time he said that Otis and Mr. Davis had a feud because Otis had broken the windows out of Mr. Davis' automobile. I asked him at this time, is this the reason that you're over here is because of the feud. He said, 'No, the feud is over with.' "

The above testimony was admitted into evidence over the objection of the appellant. It was the appellant's contention that the testimony admitted into evidence violated the standards of *Miranda* v. *Arizona* (1966), 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The court reconsidered its ruling and struck out the testimony of Officer O'Leary and instructed the jury to disregard his testimony. The appellant contends, nevertheless, that prejudicial error occurred entitling him to a new trial. With this we do not agree. In the

first place, it is ordinarily sufficient in law for the court to instruct the jury to disregard inadmissible evidence which it has heard. *Ward* v. *State* (1965), 246 Ind. 374, 205 N. E. 2d 148. Finally, in our opinion in light of the recent United States Supreme Court decision in *Harris* v. *New York* (1971), 401 U. S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643, it is proper to rebut the testimony of a defendant, who takes the stand, with evidence which would otherwise be inadmissible under the *Miranda* rule. The *Harris* decision quotes with approval the following language from *Walder* v. *United States* (1954), 347 U. S. 62, 98 L. Ed. 503, 74 S. Ct. 354, which states the rationale of the Court and we feel is controlling:

> "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment."

> ". . . [T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance of the Government's disability to challenge his credibility." 347 U. S., at 65, 98 L. Ed. at 507.

For the reasons stated we find no error in the trial court's action, in fact the appellant benefited through the erroneous action of the court in its instructing the jury to disregard the rebuttal testimony.

Finally, the appellant contends the evidence is insufficient to prove his sanity. On appeal we do not weigh the evidence and must examine it most favorable to the state. In this case the evidence on the issue of the appellant's sanity is conflicting, however it does show the following: The arresting officer stated that the appellant appeared rational and normal although excited. Another witness testified that the appellant seemed angry but normal in his actions as any angry person. Miss Sewell, who witnessed the shoot-

ing, stated that there was nothing about his action at the time that would indicate that the appellant did not know what he was doing or could not control himself. The jury might properly have chosen not to believe such testimony but we do not have the authority or right to substitute our judgment for those constitutionally authorized to find the facts. *Lynn* v. *State* (1971), 255 Ind. 631, 266 N. E. 2d 8.

Judgment of the trial court is affirmed.

Hunter, DeBruler, Prentice, Givan, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 893.