### THOMAS FAUGHT *v.* STATE OF INDIANA.

[No. 1-872A41.  Filed March 19, 1973.]

*Donald R. Ewers, Bates, Ewers and Noffsinger,* of counsel, of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant (Faught) was convicted by jury of Armed Robbery and sentenced to 10 years imprisonment.

Prior to trial, Faught confessed (and later stipulated) that on November 9, 1971, he and three others perpetrated an armed robbery at Wayne's Pharmacy in Evansville. Faught and one Robert Pease covered their faces with women's

hosiery and entered the store. Both displayed pistols and demanded "Dilaudids", morphine and cocaine. When the proprietor said he had none of these drugs, they demanded and received codeine and methadone, and $435.00 in cash.

Faught first filed a "Petition to be Declared a Drug Abuser Under the Provisions of the Indiana Drug Act of 1971", which was denied.

He then filed a special plea of insanity pursuant to statute. Since Faught stipulated that he in fact committed robbery, the evidence at trial and the issues on appeal are limited to the question of his sanity.

The primary issue is whether the trial court erred in excluding the testimony of Faught's expert medical witnesses, concerning his sanity.

Prior to trial, the court appointed Drs. Alfred J. Niedermayer and C. H. Crudden to determine Faught's sanity at the time of the offense. Both doctors filed reports stating that Faught was able to understand the charges against him and aid in his defense. Neither report, however, offered an opinion as to whether Faught was sane at the time of the crime. Dr. Crudden specifically stated that it was not possible for him to so determine with any degree of certainty.

At trial, Dr. Niedermayer testified that Faught did not suffer from any "mental disease or defect causing him to lack the substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." He further testified, however, that Faught was a drug addict, that "addiction is a psychiatric disorder", and that Faught was "under a compulsion to require the drug or he becomes sick and he will go to any length to require the drug." He further stated that "A drug addict is not in contact with reality unless he is under the influence of the drug at that time."

On cross-examination, Dr. Niedermayer testified that he was able to determine, in a 30 to 45 minute examination, that

Faught "was always sane his entire life", and that "a person doesn't become sane and insane back and forth." He also stated that "Drug addiction is a compulsion".

Dr. Crudden did not testify at the trial.

Defendant's witness, Dr. Roger E. Newton, testified that at the time of the crime, Faught was physically and psychologically dependent upon heroin and that he had a "tremendous compulsion or compulsive need to have the drug at this time." He stated that a person addicted to drugs "will do almost anything to obtain them". He compared Faught's desire to get the drugs to a person's desire to breathe if someone places a plastic bag over his head. He stated that Faught was neither able to conform nor to control his behavior "[b]ecause of his compulsive need for a particular drug."

Dr. Newton further testified that Faught did not "have a mental capacity at that time [the time of the robbery] to formulate an intent to steal or rob," but "was driven by the compulsion to obtain drugs," and that drug addiction is a disease which can cause mental defects. He finally stated that Faught was not "able to conform to the requirements of law."

Defendant's witness, Dr. Wm. D. Snively, Jr., testified that Faught did not "have the ability to conform his conduct to the requirements of law", that drug addiction is a mental disease and was the reason "that Thomas Michael Faught could not conform his conduct to the requirements of law on November 9, 1971."

The trial court ordered the entire testimony of Dr. Snively stricken and admonished the jury "not to consider the testimony of Dr. Snively concerning the mental condition of the defendant, Faught." The court also sustained the State's motion to strike Dr. Newton's testimony, stating that the question was simply "Whether or not drug addiction is a defense to the commission of a crime."

In view of the grave implications raised by this case, it is important to note what we do and do not decide here. We are

confronted with the question of whether or not a criminal defendant, who has pleaded insanity, is entitled to have qualified medical experts testify as to his sanity, when their opinions are based upon his compulsion, caused by drug addiction.

We do *not* hold that drug addiction is a defense to a crime. Nor do we hold that a criminal defendant, under the influence of voluntarily self-administered drugs, is entitled to raise his own culpable acts to the level of a defense to his crime.

Faught was not under the influence of heroin when he robbed the drug store. Rather, his defense is based upon his allegation that he was insane because of a compulsion caused by his complete lack of heroin, to which he was addicted.

We turn now to the major question presented by this appeal, whether or not the trial court erred in striking expert medical testimony concerning Faught's sanity. In *Hill* v. *State* (1969), 252 Ind. 601, 251 N.E.2d 429, our Supreme Court approved the following insanity test for Indiana:

> " 'A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to *appreciate* the wrongfulness of his conduct or to conform his conduct to the requirements of law. (2) As used in this Article, the terms "mental disease or defect" do *not* include an abnormality manifested only by repeated criminal or otherwise anti-social conduct.' (our emphasis). American Law Institute, Model Penal Code (final draft) (1962)."

The court stated the above rule was superior to the M'Naghten and Irresistible Impulse rules and observed:

> "The *M'Naghten* test places emphasis on the defendant's cognitive faculty, in that the sole question is whether the defendant knew the nature and quality of his act, and if so, did he know that such act was wrong. Such an inquiry *inhibits the type of* testimony sought from experts in the field of psychiatry by restricting the nature of testimony to the defendant's ability to differentiate between right and wrong. As a result, testimony is usually lacking in regard

to the actor's composite personality or complete mental state at the time of the act.

" 'The true vice of M'Naghten is not, therefore, that psychiatrists will feel constricted in artifically structuring their testimony but rather that the ultimate deciders—the judge or the jury—will be deprived of information vital to their final judgment.' *U.S.* v. *Freeman*, (2d Cir. 1966), 357 F. 2d 606, 620." (Our emphasis.)

This allows great latitude to expert medical witnesses in testimony concerning a defendant's mental condition.

The State argues that Indiana law does not recognize voluntary drug addiction as constituting a mental condition which will excuse defendant from accountability for his crime. The State therefore maintains that the testimony of Drs. Newton and Snively was irrelevant, and therefore, properly stricken.

We do not agree that the testimony was properly stricken. In *Hill, supra,* Justice Hunter took great pains to make it clear that in Indiana, the question of sanity is still for the jury and not for the psychiatrist or the judiciary. He also emphasized that the jury should be given all relevant evidence upon that subject and not be bound by medical terminology or narrow "right/wrong" principles, stating:

"Finally and most importantly, the [ALI] test would allow for a complete consideration of the defendant's mental state.

\* \* \*

"Extreme care must be taken at this point to guarantee that the psychiatrists do not usurp the function of the jury. The jury should never be bound by the definitions or conclusions of the experts as to what is a disease or defect."

The court then quoted with approval from *McDonald* v. *U.S.* (D.C. Cir. 1962), 312 F. 2d 847, to-wit:

" 'Our purpose now is to make it very clear that neither the court nor the jury is bound by *ad hoc* definitions or conclusions as to what experts state is a disease or defect. What psychiatrists may consider a "mental disease or de-

fect" for *clinical purposes,* where their concern is treatment, may or may not be the same as mental disease or defect for the jury's *purpose in determining criminal responsibility.* Consequently, for that purpose the jury should be told that a mental disease or defect includes any abnormal condition of the mind which *substantially* affects mental or emotional processes and *substantially* impairs behavior controls. Thus the jury would consider testimony concerning the development, adaptation and functioning of these processes and controls.

We emphasize that, since the question of whether the defendant has a disease or defect is ultimately for the triers of fact, obviously its resolution cannot be controlled by expert opinion. The jury must determine for itself, from all the testimony, lay and expert, whether the nature and degree of the disability are sufficient to establish a mental disease or defect as we have now defined those terms. What we have said, however, should in no way be construed to limit the latitude of expert testimony.' (our emphasis)"

Justice Hunter finally observed:

"The jury's function in this respect cannot be over-emphasized. Hopefully by this firm pronouncement as to the jury's duty, as it relates to the defendant's mental state of mind, jurors may, in the future, be spared the travail of those lengthy semantic charades so often characteristic of psychiatric testimony. The psychiatrist will best serve the ends of justice, if he concerns himself simply with a *description* of the defendant's mental state as he sees it. The jury then will be equipped to make its determination as to his criminal responsibility, supplied with a clear understanding of the nature of the defendant's composite mental state and its relation to the criminal act. They need not be influenced by the use of specific labels, but rather must determine for themselves, whether the defendant's disability was such as to excuse him from criminal responsibility.

"It appears that a rule on criminal insanity, expansible and flexible in concept, is necessary and should be advocated. The ALI rule is such a rule and is an attempt to provide a framework under which the jury will be afforded a complete picture of the defendant's state of mind. It creates a formula for fact finding which takes cognizance of modern medical research in the imprecise area of mental diseases and defects. We would agree with the Massachusetts court in *Commonwealth* v. *McHoul* (1967), 352 Mass. 544, 226

N.E.2d 556, that the ALI rule *is not substantively a new rule but*, its recognition of both the cognitive and volitional elements, is *rather an evolutionary restatement of existing law*. The jury, as the trier of facts, remains the sole sentinel in the protection of both the rights of the accused and the welfare of society, enabled finally to consider all relevant facts pertaining to the defendant's mental state at the time the act was committed, and being thereby better qualified to render its ultimate moral judgment under the law.

" '. . . At bottom, the determination whether a man is or is not held responsible for his conduct is not a medical but a legal, social or moral judgment. Ideally, psychiatrists—much like experts in other fields—should provide grist for the legal mill, should furnish the raw data upon which the legal judgment is based. It is the psychiatrist who informs as to the mental state of the accused—his characteristics, his potentialities, his capabilities. *But once this information is disclosed, it is society as a whole, represented by judge or jury, which decides whether a man with the characteristics described should or should not be held accountable for his acts.* In so deciding, it cannot be presumed that juries will check their common sense at the courtroom door.' (our emphasis) *U.S.* v. *Freeman, supra*, p. 619-20."

The above language makes it crystal clear that Indiana still affords a criminal defendant the opportunity to present relevant, competent and material evidence, to support his plea of insanity.

Specifically, Faught was entitled to have the jury consider all qualified medical expert testimony as to his state of mind at the time of the robbery.

This is not a revolutionary decision in Indiana. Over 100 years ago in *Rogers* v. *The State* (1870), 33 Ind. 543, our Supreme Court stated:

"We are also of opinion that an error was committed on the trial of the cause. It appeared from the evidence that the defendant was addicted to the habitual and excessive use of opium in some of its forms; and there was evidence from which it might be inferred that, at the time of the supposed larceny, he had been deprived of his accustomed supply of the drug. He sought to prove by competent testimony what effect such deprivation would have upon his mental condition, but the evidence was rejected. We think

the evidence was competent, as tending to show whether or not he was, at the time, in a condition mentally, such as to be able to commit a larceny."

The trial court having erred in excluding testimony of Drs. Snively and Newton, concerning Faught's state of mind at the time of the robbery, this cause is reversed and remanded for a new trial.

Robertson, P.J., and Lowdermilk, J., concur.