JOHN W. STEVENS v. STATE OF INDIANA.

[No. 1275S366. Filed September 24, 1976. Rehearing granted December 8, 1976.]

*Gary L. Gerling, Daniel J. McGinn, Gerling & Moore,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *James N. Shumacker,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant was charged with first degree murder in the shooting death of his wife's friend, one Norman Ward. In April, 1973, appellant learned of his wife's affection for Mr. Ward, and on May 22, 1974, after appellant had received notice that his wife had filed for divorce, he borrowed a pistol from a friend. He then located his wife and the victim at a friend's house, and there confronted them and fired five shots at the victim, four of which entered his body causing death. Appellant then returned the pistol to its owner and stated that he had shot a man and thought he had killed

him. Appellant then proceeded to his mother-in-law's house and told her to call the police for he had just killed the victim. Appellant was then taken into custody by a police officer. The jury rejected appellant's defense of insanity and he was convicted as charged and sentenced to life imprisonment.

## I.

Appellant first claims that the trial court committed error in denying his motion to dismiss the indictment. The motion was based upon the allegation that the grand jury which returned the indictment against him was improperly constituted because a grand juror, Michael Stewart, was not qualified to be a grand juror. Two distinct grounds of disqualification are presented by appellant. The first is that Stewart was biased and not impartial since he was awaiting trial on three charges of his own. The second is that Stewart was not a freeholder or householder. Indiana Code § 35-3.1-1-7 (Burns 1975) sets forth the grounds upon which an indictment is to be dismissed. That statute, including those provisions of it upon which dismissal on these bases might arguably be predicated provides:

"(A) An indictment shall be dismissed upon motion when the Grand Jury proceeding which resulted in the indictment was defective.

(B) A Grand Jury proceeding is defective when:

(1) The Grand Jury was illegally constituted; or
\* \* \*
(4) For any other ground arising out of the Grand Jury proceeding which heretofore would have been cause for abatement of the action."

We take subsection (B) (1) to mean that a grand jury would be "illegally constituted" if it was drawn or impanelled contrary to statutory or constitutional standards or if members of it did not have the legal qualifications to serve as grand jurors. The processes of drawing and impanelling are not challenged. The legal qualifications of grand jurors, the absence of which may render the jury "illegally constituted" are set out in Ind. Code § 33-4-5-7 (Burns 1975) which provides in pertinent part:

"To be qualified as a juror, either grand or petit, a person must be a resident voter of the county, and a freeholder or householder, or the spouse of a householder."

Since freedom from personal bias is not one of these initial legal qualifications for a grand juror, the presence of such bias in a member would not render the grand jury "illegally constituted" and cannot serve as a proper legal basis for a motion to dismiss an existing indictment under subsection (B)(1) of the dismissal statute.

Likewise appellant's claim of disqualification by reason of bias cannot be a predicate for dismissal under subsection (B)(4). In *Williams* v. *State,* (1918) 188 Ind. 283, 123 N.E. 209, and *Pontarelli* v. *State,* (1931) 203 Ind. 146, 176 N.E. 696, this Court held that bias or lack of impartiality of a grand juror could not serve as the basis for a plea in abatement to a prosecution already commenced upon an indictment. As it was not formerly a ground for abatement, it is not a ground for dismissal under subsection (B)(4).

The second ground posited for disqualification of Stewart is that he was not a freeholder or householder as required by Ind. Code § 33-4-5-7. This ground is properly urged under subsection (B)(1) as it goes to his legal qualifications for grand jury service. The trial court concluded that Stewart was a householder upon a record which showed that Stewart was twenty years of age, and lived in the county in an apartment with his nineteen year old brother. The two resided in the apartment on a regular day to day basis without supervision from parents or others, cared for themselves and the apartment, and together paid the rent. Appellant contends that he was not a householder because he was not the head of a household or family. In appellant's view, a person cannot be such a head of a household unless others live with such person, and are dependent upon him. Appellant draws support for his contention that such a relationship of dependency must exist from the case of *Carpenter* v. *Dame,* (1858) 10 Ind. 125. Such a meaning does arise from the discussion in that case about the meaning of the requirement that a petit juror be a

householder, however, the Court did not make a holding on the point, and, therefore, the case is only persuasive, in effect, and not binding upon us. No other Indiana case discussing this requirement for jurors has been presented to us.

We take the statutory requirement that a grand juror be a householder to have several purposes. By it, the Legislature intended that grand jurors be actual members of the community served by the grand jury. They must also have had the experience of making important and binding practical decisions of everyday living. And they must be capable of making important decisions independently of family or relatives or others.

Given these purposes of the statutory requirement, we have no difficulty in concluding that Stewart was a householder, and that his presence on the grand jury did not render the proceedings of that body defective, thereby requiring that the indictment returned by it against appellant be dismissed. He was making the decisions and choices affecting every aspect of his own welfare, and was doing so independently of the supervision and guidance of parents, relatives or others. And he enjoyed the status of full participant in the life of the community in which he resided.

## II.

Appellant also assigns error with regard to the alleged misconduct of a member of the petit jury which tried appellant. During the course of the trial appellant's counsel was informed that a juror, who had denied knowledge of the facts of this case in pre-trial voir dire questioning, had in fact discussed the case with a defense witness, Mary Underwood. The trial court held a hearing on the matter, hearing testimony from the juror and two defense witnesses. The juror testified that he had, about a year before the trial, worked with Mary Underwood, appellant's sister-in-law, and that she had told him that her brother-in-law had been arrested in a shooting. He said that he had not realized any connection with this

case until he saw Mrs. Underwood's husband, a police officer, testify for the State. The juror testified that he had not formed any conclusions of guilt or innocence, and that he was not prejudiced in favor of or against appellant. The trial court overruled appellant's motion for a mistrial, and belated challenge to the juror.

In *Barnes* v. *State,* (1975) 263 Ind. 320, 330 N.E.2d 743, a juror on voir dire denied having relatives on the staff of the prosecutor. It was later discovered that the juror's wife's second cousin was a member of the prosecutor's staff with some connection to that case. This was raised by defendant Barnes in his motion to correct errors. In *Barnes* we held that this inaccurate voir dire response presented a possibility of bias on the juror's part, and therefore remanded to the trial court for a hearing to determine whether the juror had been aware of the relationship either during voir dire or thereafter prior to the verdict. The possibility of bias was sufficient to require that the defendant be afforded an opportunity to explore the juror's prejudices so as to challenge for cause if bias existed.

Here appellant was afforded such an opportunity during trial (outside the presence of the rest of the jury). The trial court heard and overruled his objection to the juror for cause. The sustaining or overruling of a challenge for cause is within the trial court's discretion. *Klink* v. *State,* (1932) 203 Ind. 647, 179 N.E. 549. We cannot say that that court's ruling was without a proper basis under the facts in this case.

The issue remains whether it was proper for the trial court, when apprised of apparently inaccurate answers of a juror during voir dire, to hold a hearing on the matter after the jury has been sworn. Appellant argues that the singling out of one juror for questioning about bias will create bias even if none existed before. We agree that this is a real danger. However, this risk must be balanced against the great waste of discharging the jury and terminating the trial. In many

cases an honest and sincere juror may be unaware or unable to recall, under the pressure of his first contact with the courts, some tangential relationship with a party, or some tenuous knowledge of the facts. If this relationship or knowledge would not be sufficient to secure the juror's excusal for cause, it should not be sufficient to require a mistrial.

We believe that the trial court pursued the proper course in dealing with the potential prejudice of this juror: a hearing, out of the presence of the remainder of the jury to determine whether (1) the juror's inaccurate response indicates bias or lack of disinterest, and (2) whether the hearing itself has created a bias in the juror. The court should then allow the defendant to challenge the juror for cause, and should excuse the juror and declare a mistrial if bias is found to be present. To the extent that *Johnston* v. *State,* (1959) 239 Ind. 77, 155 N.E.2d 129, seems to suggest that any inaccurate answer by a prospective juror on voir dire is grounds for a new trial, that case must be distinguished.[1]

Here there is ample evidence to support the overruling of the challenge. The juror testified that he did not remember any discussion of the facts of the case, and could still hear evidence with an open mind. The witness with whom he had conversed, Mrs. Underwood, was a defense witness, whose version of the conversation indicates that the juror would be more likely to have been influenced in appellant's favor than against him. Finally Mrs. Underwood, who had worked with the juror, attested to his honesty. We find no error in overruling the challenge of denying the mistrial.

---

1. *Johnston* concerned a juror who erroneously denied being related to a murder victim. Ind. Code § 35-1-30-4, paragraph Fourth (Burns 1975) renders such a person incompetent to serve as a juror. *Johnston* correctly held that such a juror must be disqualified regardless of his knowledge of the relationship, and that if the relationship becomes known after the jury is empaneled, a mistrial or new trial is necessary.

Here and in *Barnes* the cause for challenge was bias; bias may result from a conversation with a witness, or kinship to the prosecutor, but will not absent awareness of those facts. Therefore an innocent misrepresentation as to absence of factors tending to create bias is not, per se, grounds for dismissal of the juror.

### III. .

Appellant made an oral statement to Detective Gulledge of the Evansville Police Department, which was suppressed by the trial court and excluded from the State's case-in-chief, because it was taken after appellant indicated a desire to have counsel present. However after appellant submitted evidence of his own insanity at the time of the shooting, the State was permitted to have the detective testify in rebuttal. The substance of the statement was that appellant had emptied his pistol shooting it at the victim, and that he had done what he intended to do.

Appellant correctly argues that our decision in *Pirtle* v. *State,* (1975) 263 Ind. 16, 323 N.E.2d 634, makes this statement inadmissible as substantive evidence. When an individual in custody indicates his desire to consult with an attorney, questioning must cease until an attorney is present and consents to the questioning.

However, appellant goes too far when he suggests *Pirtle* makes the statement inadmissible for any purpose. Appellant testified in his own behalf that he did not remember the shooting. The State was properly allowed to rebut this assertion with his statement, which shows that shortly after the shooting he did remember it. *Davis* v. *State,* (1971) 257 Ind. 46, 271 N.E.2d 893. *See, Harris* v. *New York,* (1971) 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1; *Oregon* v. *Hass,* (1975) 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570; *Johnson* v. *State,* (1972) 258 Ind. 683, 284 N.E.2d 517, (De-Bruler, J., dissenting); *Sankey* v. *State,* (1973) 157 Ind. App. 627, 301 N.E.2d 235.

### IV

At the opening of appellant's case-in-chief the State orally moved for an order limiting the number of character witnesses to be called and the scope of their testimony.[2] The trial court or-

---

2. This motion cannot properly be called a motion in limine, because "in limine" means "at the threshold," that is, before the trial begins. Nonetheless it seeks the same relief as a motion in limine, that being an advance ruling on the admissibility of evidence.

dered appellant to limit the testimony of his character witnesses to the state of appellant's mind at the time of the offense, but in his order recognized that witnesses could describe appellant's past behavior and any changes in it around the time of the shooting. The trial court said in his order:

"BY THE COURT: If you are putting a witness on to testify that this person was insane at that time because of the kind of a character he was at one time and how it changed and that if you question that person as to whether or not they have an opinion as to his sanity at that time, then I think you are justified in it."

We read the order as requiring only that appellant's witnesses confine themselves to testimony of events to appellant's sanity at the time of the offense. We cannot agree with appellant that the ruling excluded evidence of any conduct of appellant's which might have enlightened the jury as to appellant's state of mind at the time of the shooting. To the extent that appellant seems to argue that even this limitation is overly restrictive, we quote the decision of this Court in *Fulmer* v. *State*, (1967) 249 Ind. 261, 270, 230 N.E.2d 307, 312:

"[I]t is the law of Indiana that under a plea of not guilty by reason of insanity, the general rule is that there is great latitude in admitting evidence of other conduct of the defendant, but it is limited to the extent that such conduct must be *relevant* to the issue of insanity." (Original emphasis.)

Appellant's brief also assigns error in the limiting of the number of character witnesses he was to present. Our reading of the record discloses that the trial court made no such order; that portion of the State's motion was never sustained. Appellant directs our attention to no instances in the trial in which he was precluded from offering testimony under this ruling. See Ind. R. Ap. P. 8.3(A)(7).

## V.

Appellant assigns error to the admission of testimony by Janice Stevens, wife of appellant, as to conversations between

appellant and his wife, during the course of their marriage, in which appellant threatened to shoot both his wife and the victim.

Communications between spouses which are intended to remain confidential between them are privileged by virtue of a statute, Ind. Code § 34-1-14-5 declaring spouses to be incompetent with respect to confidential communications between them. *Shepherd* v. *State*, (1971) 257 Ind. 229, 277 N.E.2d 165. We held in *Richard* v. *State*, (1974) 262 Ind. 534, 319 N.E.2d 118, that a threat by a husband against a third person, communicated to his wife with the request that she relay the message to the third person, was not within the privilege because it was not confidential. Here there was no indication that the threats were intended to be transmitted.

We must go on to consider whether, by his plea of insanity, appellant "opened the door" to evidence otherwise inadmissible as privileged. This Court has often stated that "when the appellant enters a plea of not guilty by reason of insanity, he opens wide the door to all evidence relating to his past behavior and his environment including commission of past crimes." *Wilson* v. *State*, (1975) 263 Ind. 469, 333 N.E.2d 755, 764; *Stamper* v. *State*, (1973) 260 Ind. 211, 216, 294 N.E.2d 609, 612. In *Twomey* v. *State*, (1971) 256 Ind. 128, 132, 267 N.E.2d 176, 179, we said, "Once a plea of insanity is offered by a defendant, all relevant evidence is deemed admissible." Applying this rule, we have frequently allowed reception of evidence concerning past crimes, misconduct, and bad reputation in determining an insanity issue. *Wilson, supra; Stamper, supra, Young* v. *State*, (1972) 258 Ind. 246, 280 N.E.2d 595; *Lynn* v. *State*, (1971) 255 Ind. 631, 266 N.E.2d 8; *Fulmer* v. *State, supra; Kiefer* v. *State*, (1960) 241 Ind. 176, 169 N.E. 2d 723. In *Twomey, supra,* a psychiatrist was allowed to give his opinion as to the likelihood of a recurrence of temporary insanity. In *Kallas* v. *State*, (1949) 227 Ind. 103, 83 N.E.2d

769, evidence of the defendant's homosexuality and sadistic tendencies was admitted.[3]

It is our view that in each of these cases the effect of the issue of insanity was to allow the admission of evidence which, while having some logical relevance to the guilt of the accused, would ordinarily be excluded because its prejudicial effect outweighs its probative value. This is the rationale set forth by McCormick for excluding evidence of other crimes, McCormick, EVIDENCE § 190 at 447 (1971), and this Court has advanced the same reason. *Layton* v. *State*, (1966) 248 Ind. 52, 221 N.E.2d 881; *Loveless* v. *State*, (1960) 240 Ind. 534, 166 N.E.2d 864. The same reasoning applies to such evidence as of homosexuality and the recurrence of mental illness. We read the "opening the door" rule to mean that the defense of insanity makes legally relevant and admissible all evidence which "throw some light on the question" of sanity. When we said in *Fulmer, supra*, at 230 N.E.2d 307, 311, "The exclusionary rules, and the protection to the defendant afforded by them are relaxed.", we referred to the exclusion of the "[h]ighly prejudicial and/or inflammatory matter" mentioned in the next sentence. We have not in the past considered the effect of an insanity plea on an evidentiary privilege. We now hold that such a plea does not "open the door" to privileged matter, although a defendant may waive a privilege by himself introducing evidence falling within that privilege.

In the instant case there is no indication that appellant introduced any evidence either through appellant himself or Mrs. Stevens of any confidential marital communication. Therefore we must conclude that the trial court erred in permitting the State to question Mrs. Stevens regarding the conversation with appellant.

However under the facts of this case we find the error

3. In *Wilson* v. *State*, (1966) 247 Ind. 454, 217 N.E.2d 147, a "typewritten document" was introduced. It is not clear what the nature of the objection to this exhibit was.

harmless. Appellant shot the victim in front of three witnesses who were in the same room and another who saw the shooting from outside, through a window. All of these witnesses testified that appellant shot the victim; several testified that five shots were fired, all at the victim. All inside heard appellant say words to the effect of "I told you I'd kill [the victim]." The outside witness heard appellant say that appellant hoped he had killed the victim. The friend who had loaned appellant the gun used testified that appellant returned the gun on the night of the shooting, saying that "he'd shot the guy and thought he'd killed him . . . he just said he emptied the gun."

We find overwhelming evidence to the effect that appellant shot the victim. To the extent that the privileged communication may have served to show intent, malice, premeditation, or sanity it was merely cumulative, since appellant's statement "I told you I'd kill the ——————" adequately apprised the jury that appellant had previously threatened the victim.

## VI.

Finally appellant asserts that the trial court erred in refusing to give two defense instructions on the issue of insanity.

Appellant tendered the following instruction on temporary insanity:

"You are instructed that the law of this State recognizes temporary insanity. You are not to be influenced by the statement of any medical physician who testifies, if they testify, that there is no such thing as temporary insanity. There is a distinction between the definition of temporary insanity in the law and in medicine and it is the law in Indiana that if a person is temporarily insane at the time of the commission of the alleged act, then you must find him not guilty."

In *Flowers* v. *State*, (1957) 236 Ind. 151, 139 N.E.2d 185, the defendant tendered an identical instruction, which the trial court gave after deleting the words "temporary" and "temporarily". This Court held that the instruction inadequately informed the jury of the nature of the insanity de-

fense, noting that Indiana law proceeds under the assumption that insanity may be limited in duration. 139 N.E.2d at 196.

Under a plea of not guilty by reason of insanity the issue is the accused's state of mind at the time of the offense. The duration of any mental disease or disorder is of no consequence, provided that it exists at the moment of the offense.

Here the trial court gave an instruction which quoted the definition of legal insanity of the American Law Institute's Model Penal Code, as adopted by this Court in *Hill* v. *State,* (1969) 252 Ind. 601, 251 N.E.2d 429. That instruction adequately referred the jury to appellant's mental condition "at the time of such conduct." Moreover, the testimony of the court-appointed psychiatric witnesses did not deny the existence of temporary insanity, but merely stated the doctors' opinions that appellant was not within the legal definition of insanity at the time of the offense. Therefore the greater part of appellant's instruction was not supported by evidence.

Appellant also tendered the following instruction defining "mental disease or defect":

"In determining whether or not a mental disease or defect exists, you are instructed that a mental disease or defect includes any abnormal condition of the mind, which substantially effects mental or emotional process and substantially impairs behavior controls."

Appellant derives this instruction from *Faught* v. *State,* (1973) 155 Ind. App. 520, 293 N.E.2d 506. In *Faught* the trial court excluded defense testimony on the defendant's heroin addiction and its effect on his mental capacity. The Court of Appeals reversed, and quoting language similar to the above instruction from *Hill* v. *State, supra,* held that recognition of the existence of a particular mental disorder by the psychiatric community should not control the jury's determination.

We believe that the above instruction is a correct statement of Indiana law, but that it is not necessary to give an instruc-

tion defining "mental disease or defect" unless the trial court in its discretion determines that such a definition is necessary to dispel jury confusion. Such an instruction might be necessary where psychiatric witnesses agree that the defendant has a given condition, but disagree on whether this condition is a mental disease or defect. We find no need for such a definition under the facts of this case.

The conviction is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 354 N.E.2d 727.

## ON PETITION FOR REHEARING

DeBRULER, J.—Appellant has petitioned for rehearing of his appeal, which we decided September 24, 1976 (reported at 354 N.E.2d 727). His contention is that this Court failed to consider one of his assigned errors which was preserved and argued on appeal. The error arises from appellant's discovery, after the jury had been sworn and some evidence presented, that one of the jurors was a former co-worker of a defense witness, and had discussed the facts of this case with that witness. The trial court held a hearing to determine whether the juror had formed conclusions as to appellant's guilt, and following the hearing overruled appellant's challenge of the juror for cause. We approved this procedure and result.

Appellant, however, also sought to challenge the juror peremptorily at the same time. We did not treat this issue in our original opinion. We therefore grant appellant's petition for a rehearing upon this issue only.

Appellant relies upon *Kurtz* v. *State*, (1896) 145 Ind. 119, 42 N.E. 1102, which was not included in his original appellate brief, to support his position that the trial court was required to entertain his peremptory challenge after the swearing of the jury. In *Kurtz* the defendant sought to challenge a juror peremptorily after the swearing of the jury. The trial court refused to permit the challenge to be made. This Court noted numerous cases dating back as far as

1842, which held that peremptory challenges could be exercised *until the swearing of the jury.* 145 Ind. at 123. The Court held that after their swearing, it was too late to exercise such challenges unless there was first made a "motion to set aside the submission" of the case to the jury. The opinion seems to hold that this procedure operates as a discharge of the jury and necessitates the selection of a new panel. We have ben unable to discover any cases in which Indiana courts have considered when a trial court must withdraw submission of a case to the jury in order to allow a peremptory challenge.

We now hold that a defendant in a criminal prosecution is not entitled to challenge a juror peremptorily after the jury is sworn. If, as in this case, a prospective juror has given inaccurate responses to voir dire questions, the defendant may challenge that juror for cause, and the trial court shall hold a hearing as described in *Barnes* v. *State,* (1975) 263 Ind. 320, 330 N.E.2d 743, and our original opinion in this case, to determine whether the juror is biased. To the extent *Kurtz* holds that a defendant may be entitled to challenge a juror peremptorily after the swearing of the jury, that case is overruled.

There was no error in the trial court's refusal to allow appellant to challenge the juror peremptorily, and the conviction is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 357 N.E.2d 245.