John Joseph NAPOLI, Appellant,

v.

STATE of Indiana, Appellee.

No. 382S80.

Supreme Court of Indiana.

July 12, 1983.

Susan K. Carpenter, Public Defender, Jay Rodia, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Defendant-appellant, John Joseph Napoli, was convicted by a jury of burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1979 Repl.) and sentenced to an eleven-year term of imprisonment. In this direct appeal, he raises three issues:

(1) Whether the trial court erred by failing to conduct a hearing on the competency of a witness and by permitting her to testify.

(2) Whether there was sufficient evidence to support the verdict.

(3) Whether the trial court erred by refusing to grant the defendant a new trial in light of a claim of possible juror bias.

The evidence most favorable to the verdict shows that the defendant and Dawn Horvath visited the residence of Christopher Blue in the early afternoon of June 9, 1981. Also present that afternoon were Steven Andrew Robinson and Susan Ullery, friends of Horvath and Blue. Defendant and Horvath were heroin addicts who needed money in order to purchase more of the drug. After his initial plan to steal items from the Blues' house was rejected by Horvath, the defendant proceeded across the street, at her suggestion, to the residence of Horvath's parents. Horvath had neither a key to her parents' house nor permission to enter it as she had previously left home after stealing a car and several hundred dollars from her parents.

Defendant made three trips back and forth between the two houses bringing a mug full of money and two stereos inside the Blues' house. Horvath identified these items to those present as belonging to members of her family. Both Blue and Robinson testified that they observed the defendant leaving the Horvath residence carrying certain of these items. When Judy Blue, Christopher's mother, returned home from work, defendant and Horvath carried these items outside and sat down beside them on the side of the Blues' residence. When Alex Horvath, Dawn's father, drove up in his driveway across the street, the defendant and Dawn ran to the rear of the Blues' house. Mr. Horvath discovered that the window screen had been removed from a side window to allow entry into the house and that several items belonging to him, including two stereos, were missing. He grabbed the defendant and Dawn as they attempted to enter a taxicab in front of the Blues' home and held them until the police arrived. Dawn Horvath pleaded guilty to burglary, a class C felony, and petitioned the court for treatment as a drug abuser as an alternative to incarceration.

### I.

Dawn Horvath testified for the State at the defendant's trial. After she took the witness stand and answered several preliminary questions, defense counsel requested permission to voir dire her. The jury was excused from the courtroom and counsel

was allowed to question her. She answered numerous questions about her heroin habit and about her ability to recall and relate the events of June 9, 1981. After he completed this examination, defense counsel objected to permitting her to testify because of her admission that on the date of the offense she had been deprived of her usual dose of heroin, was suffering from the early effects of withdrawal and had been unable to think clearly. The trial court overruled this objection and allowed Horvath's testimony. Defendant now asserts that the trial court erred by failing to conduct a hearing to determine if Horvath was competent to testify and by permitting her to testify over his objection.

The competency of a witness to testify is statutorily prescribed. Ind.Code § 35–1–31–3 (Burns 1979 Repl.) [Acts 1905, Ch. 169, § 235, p. 584 (repealed 1982); see Ind.Code § 35–37–4–1 (Burns Supp.1982)] provided that competent witnesses included "[a]ll persons who are competent to testify in civil actions" and "[a]ccomplices, when they consent to testify." Ind.Code § 34–1–14–4 (Burns 1973) states that all persons shall be competent witnesses in a civil action except as otherwise provided. Horvath clearly qualifies as a competent witness under these provisions and is not disqualified under any of the categories of Ind.Code § 34–1–14–5 (Burns 1973), which describes those who shall not be competent witnesses.

Defendant cites *Ware v. State*, (1978) 268 Ind. 563, 376 N.E.2d 1150, in support of his argument that Horvath was not competent to testify because she was suffering from the effects of heroin withdrawal on the day of the offense. We said there that,

"[t]he test of competency of a witness is whether the witness has sufficient mental capacity to perceive, to remember and to narrate the incident he has observed and to understand and appreciate the nature and obligation of an oath."

*Id.* at 565, 376 N.E.2d at 1151. Defendant claims that Horvath did not satisfy the requirements of this test because of her admission that she was not thinking clearly on the date in question and her admission, after repeated questioning by defense counsel, that she was unable to relate to the jury all of the events of that day.

Defendant does not use the term "competency" here in its strict statutory sense. His challenge is to the "worthiness" of Horvath as a witness in light of her admission that her thinking was clouded on the day of the crime. By arguing that Horvath was an incompetent witness under the *Ware* test, the defendant contends that Horvath lacked "worthiness" as a witness to such a degree that no reasonable trier of fact could credit her assertions. The burden is on the challenger to establish this lack of "witness worthiness", *Ware, supra; Kimble v. State*, (1974) 262 Ind. 522, 319 N.E.2d 140, and he must be given a reasonable opportunity to question the witness to establish it. Here, that opportunity was clearly afforded. The jury was excused and defendant was allowed to extensively question Horvath. While this examination revealed that Horvath had suffered some degree of stress on the day of the offense, she also claimed that she had been able to perceive and understand the events of the day and that there was no confusion in her mind. The trial judge did not abuse her discretion by permitting this witness to testify.

## II.

Defendant next argues that there was insufficient evidence to support the jury's verdict. In reviewing claims of evidentiary insufficiency, this Court neither weighs the evidence nor resolves questions of credibility, but only looks to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558. If from that viewpoint there was evidence of probative value from which a reasonable trier of fact could conclude that a defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Taylor v. State*, (1970) 260 Ind. 64, 291 N.E.2d 890; *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657.

Indiana Code § 35–43–2–1 (Burns 1979 Repl.) provides in pertinent part,

"A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary . . . a class B felony . . . if the building or structure is a dwelling."

Defendant contends that while several witnesses testified that they saw him leaving the Horvath residence carrying property belonging to the Horvaths, no one actually saw him break into that residence. He claims that it was possible that someone else broke into the home. The elements of burglary may be shown by both direct and circumstantial evidence. *Ward v. State,* (1982) Ind., 439 N.E.2d 156; *Cook v. State,* (1980) Ind.App., 403 N.E.2d 860. A reasonable jury could have concluded that the defendant broke into the Horvath home from the testimony of the witnesses who saw him enter and leave that house and from the direct testimony of Dawn Horvath that after first reporting to her that no doors were open and being advised by her to check the windows, defendant returned with the stolen stereos.

■ Defendant also claims that there was insufficient evidence on the issue of his intent to commit a felony. He argues that because he was suffering from the effects of heroin withdrawal he was unable to form the intent necessary to commit the crime of burglary. Dawn Horvath testified that he was experiencing cramps, watery eyes and nose and vomiting fits because of his lack of heroin. This evidence is potentially admissible on two·issues. It may be admitted in support of an inference that the defendant was insane or mentally ill at the time of the offense, *Faught v. State,* (1973) 155 Ind. App. 520, 293 N.E.2d 506, or it may be allowed into evidence to directly negate the existence of the necessary criminal intent. Since the defendant here entered no plea of insanity, this evidence was not relevant to that issue. Thus it was only relevant directly on the issue of whether defendant possessed the requisite specific intent. The existence of this intent was a question of fact to be determined by the jury. *Walker v. State,* (1968) 250 Ind. 649, 238 N.E.2d

466; *Hunter v. State,* (1965) 246 Ind. 494, 207 N.E.2d 207.

■ From the evidence presented at trial that defendant made three separate trips to remove property from the Horvath residence and attempted to avoid detection and to escape when Mr. Horvath returned home, the jury could reasonably have concluded that defendant had the necessary intent and that evidence of his withdrawal symptoms did not render the evidence of this intent insufficient.

### III.

■ Defendant finally contends that the trial judge erred by refusing to grant him a new trial in light of his claim of possible juror bias. Attached to defendant's motion to correct errors was an affidavit of Dawn Horvath stating that she knew one of the jurors who had heard and decided the case and had lived with him for three months during the summer of 1978. She identified him by his position in the jury box and stated that she knew him by the name of Doug Cox. Defendant argues that by not acknowledging his relationship with Horvath when questioned on voir dire, this juror gave an untruthful or inaccurate answer which prevented the defendant from investigating a possible source of bias against him. *See Barnes v. State,* (1975) 263 Ind. 320, 330 N.E.2d 743.

At the hearing on defendant's motion to correct errors, however, the juror testified that his name was Randal Hogue, that he had never met or seen Horvath prior to .the defendant's trial and that he had lived with his parents in Mishawaka during the summer of 1978. The trial judge declined to grant defendant a new trial on the basis of this evidence. We find that this was not an abuse of her discretion and we will not disturb her ruling on appeal. *Smith v. State,* (1982) Ind., 429 N.E.2d 956; *Williams v. State,* (1979) Ind.App., 392 N.E.2d 817.

The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.