John MATTHEWS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1283 S 441.

Supreme Court of Indiana.

April 26, 1985.

R.W. Chamblee, Jr., South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, John Matthews, was convicted by a jury for attempted murder, a Class A felony, Ind.Code § 35–42–1–1 (Burns 1979 Repl.) and Ind.Code § 35–41–5–1 (Burns 1979 Repl.), and attempted battery with a deadly weapon, a Class C felony, Ind.Code § 35–42–2–1(3) (Burns 1984 Supp.) and Ind.Code § 35–41–5–1 (Burns 1979 Repl.). He was sentenced to the Indiana Department of Correction for concurrent terms of fifty years for attempted murder and eight years for attempted battery with a deadly weapon. In this direct appeal defendant raises the following two issues:

1. Whether there was sufficient evidence to sustain the defendant's conviction for attempted battery with a deadly weapon; and

2. Whether defendant was denied his right to a fair and impartial jury because the trial court interrogated an individual juror and then instructed this juror not to discuss the nature of this inquiry or the matters discussed therein.

The record shows that on January 6, 1983, Stanley A. Korabek and Derek Diet-

er, undercover police officers with the South Bend Police Department, were instructed to arrest defendant on a prior, unrelated robbery charge. The officers did not find defendant at his home but did observe two men matching defendant's description in the next block. By the time the officers circled the block, one man had left but a man matching defendant's description was observed walking in an alley. The officers drove down the alley and, when they reached the man, Officer Dieter asked for directions to a nearby street. During this conversation both officers identified the man as defendant. Defendant had kept his hands in his pocket and, since the officers feared he might be armed, they decided to wait for assistance from a backup uniformed officer.

While awaiting the arrival of the uniformed officer, Korabek and Dieter continued their surveillance of defendant. Concluding that defendant was aware of their presence, Korabek and Dieter decided that they would have to apprehend defendant immediately. Korabek and Dieter followed defendant's course until defendant stopped to stand on a porch. Defendant was now approximately six feet from the left front of the officers' car and his arms were clasped in front of him. As Officer Korabek began to exit from his car, he shouted through the open car window, "Police, John, hold it!" Defendant fired two shots at Officer Korabek (the factual basis for the attempted murder conviction) and then began to run away from the officers. Both officers fired shots at defendant and defendant returned fire. Defendant fired three more shots over his shoulder as he ran. Officer Dieter testified that these last three shots were fired either generally or directly at him. Defendant was apprehended a short distance away by a uniformed officer, arrested and subsequently charged with the present challenged offense of attempted battery with a deadly weapon.

## I.

Defendant first contends that there was insufficient evidence to sustain the jury verdict for attempted battery on Officer Dieter. Defendant argues that "his specific intent" at the time he fired the last three shots "was to simply escape the danger which had confronted him, rather than to specifically batter Officer Dieter."

Our standard for reviewing sufficiency claims has been firmly established. On review, we do not weigh the evidence nor judge the credibility. We are constrained to consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Smith v. State*, (1984) Ind. App., 471 N.E.2d 1245; *Deneal v. State*, (1984) Ind., 468 N.E.2d 1029; *Galmore v. State*, (1984) Ind., 467 N.E.2d 1173.

The requisite elements of attempted battery with a deadly weapon, a Class C felony, in accordance with Ind.Code § 35–42–2–1 (Burns 1984 Supp.) and Ind.Code § 35–41–5–1 (Burns 1979 Repl.) are:

1. the commission of a substantial step toward
2. knowingly or intentionally
3. touching another person
4. in a rude, insolent or angry manner
5. by means of a deadly weapon.

The Indiana attempt statute limits this inchoate crime to intentional conduct. The culpability required by our battery statute is knowing or intentional conduct. In accordance with Ind.Code § 35–41–2–2 (Burns 1979 Repl.):

"(a) A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so.

"(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."

Therefore, the requisite culpability exists where defendant's conscious objective is to shoot another person, or where defendant is at least aware of a high probability that, by his conduct of shooting, one of the bul-

lets would strike another person. *Pacheco v. State*, (1983) Ind.App., 444 N.E.2d 343.

■ Contrary to defendant's theory, however, battery is not a specific intent crime. *Norris v. State*, (1981) 275 Ind. 608, 419 N.E.2d 129. The intent required in attempted battery with a deadly weapon is the intent to touch another person in a rude, insolent or angry manner. *Washington v. State*, (1982) Ind., 441 N.E.2d 1355.

■ While battery requires defendant to have intended to touch another person, defendant need not personally touch another person since battery may be committed by the unlawful touching by defendant or by any other substance put in motion by defendant. *Reed v. State*, (1970) 255 Ind. 298, 263 N.E.2d 719. Therefore, the intent to touch Officer Dieter would certainly be satisfied where defendant fired bullets at Officer Dieter.

■ Defendant argues that his intent at the time the last three shots were fired was to escape rather than to batter Officer Dieter. It is well established that a trier of fact may employ reasonable inferences, based upon an examination of the circumstances surrounding an act to conclude it was committed with the requisite intent. *Deneal v. State*, 468 N.E.2d at 1031; *Washington v. State*, 441 N.E.2d at 1357; *Norris v. State*, 419 N.E.2d at 132. An examination of the circumstances includes consideration of the conduct and the natural and usual sequence to which such conduct logically and reasonably points. *Parker v. State*, (1981) Ind.App., 424 N.E.2d 132. Thus the intent to commit battery may be inferred from the deliberate use of a deadly weapon in a manner calculated to strike another person.

■ The jury could have concluded that defendant did not intend to batter Officer Dieter, as defendant maintained. However, the jury found otherwise. Based on defendant's course of conduct and his use of a deadly weapon, the jury could legitimately infer defendant intended to strike Officer Dieter. Under our standard of review, we will not disturb the judgment.

Defendant further maintains that "two men who had long hair and looked kind of run down" followed him which made him become leery. According to defendant, he heard one of the men state, "Let's take him," whereupon the passenger began to exit the car, gun in hand, and cursing at the defendant. Defendant states that it was because of this perceived danger that he then fired two shots at the vehicle and began to run, firing three additional shots as he ran. Defendant is essentially arguing that due to the civilian attire and long hair length worn by Korabek and Dieter as undercover police officers, and because of the officers' continual surveillance of defendant, that defendant did not realize they were police officers but rather presumed that the officers were unsavory characters. While the Indiana battery statute includes a provision directed at the shooting of law enforcement officers, defendant was not so charged. Defendant's conduct indicates he intended to harm someone and therefore the evidence is sufficient to support his conviction of attempted battery with a deadly weapon. *Norris v. State*, 419 N.E.2d at 132.

■ Finally, defendant maintains that his intent at the time he fired the last three shots was to escape the danger which had confronted him rather than to specifically batter Officer Dieter. In *Green v. State*, (1973) 159 Ind.App. 68, 304 N.E.2d 845, the defendant tried to run over a law enforcement officer with his automobile to effect his escape. The defendant challenged the sufficiency of the evidence to establish his intent to kill as opposed to his admitted intent to merely escape apprehension and arrest. In *Green*, 304 N.E.2d at 852, the Court of Appeals noted:

"It thus appears that the meagre authority available in other jurisdictions supports conviction for assault and battery with intent to kill even though the intent exemplified by the actor, as here, is indicative of an intent to escape apprehension and arrest rather than a specific intent to

actually kill the person or persons obstructing the escape path."

Under the circumstances of this case, we similarly conclude that an intent to escape is not a valid defense to attempted battery with a deadly weapon.

## II.

Defendant next argues that his right to a fair and impartial jury was violated by the trial court's interrogation of and admonishment to an individual juror. The trial court interrogated juror Gates because of a question Gates had submitted to the court regarding the racial composition of the jury. After this inquiry, the trial court instructed Gates not to discuss this hearing with the jury, even during jury deliberations. While the state moved to have Gates replaced by the alternate, this motion was opposed by defendant.

When the bailiff was taking the jury back to the jury room at a recess several of the jurors indicated to him that they had a question. The judge's procedure requires that when the bailiff receives a question from the jury, the jury is then instructed to put the question in writing. The judge then reads the question to both the state and defendant outside the presence of the jury. After the judge decides a response to the question both attorneys present their concurrence or objection to the decision reached.

The record shows that during the state's case in chief Gates submitted the following questions to the trial court, in accordance with the above noted procedure: "Why is this case being tried by an all-white jury? Why was the only black person in the first group of jurors asked to leave before jury selection started?"

The woman who was dismissed from the panel of prospective jurors was excused by the trial court because she resided at the site of the confrontation and her husband was on the state's list of prospective witnesses.

The court, since Gates' question was extraneous to the issues in the case and due to the risk Gates might become distracted by this extraneous issue, decided to have Gates brought out separately for a hearing. The purpose of the hearing was to determine whether Gates would be so distracted that he would be unable to be fair and impartial to both the state and defendant.

This hearing was held by the trial court prior to submission of this case to the jury and outside the presence of the rest of the jury but within the presence of defendant. Defendant objected to this hearing because he felt that the other jurors may wonder why Gates was brought out separately. But, defendant suggested that if the court should interrogate Gates, the court should admonish Gates not to mention why he was individually brought before the court.

The judge explained to Gates that he was brought out apart from the rest of the jury because of the question he presented to the court. The judge asked Gates whether he felt he would be able to be fair and impartial to both the prosecution and defense in view of the concerns expressed in his question. Both the prosecution and defense were presented with the opportunity to question Gates.

Defendant's argument is twofold: one, the court inquiry created a bias which had otherwise not existed, and, two, the admonition improperly invaded the province of the jury.

The inquiry made by the court was objected to by defendant on the basis that such inquiry could create a bias in Gates which had otherwise not existed, similar to *Stevens v. State*, (1976) 265 Ind. 396, 354 N.E.2d 727. In *Stevens*, 354 N.E.2d at 732, this Court considered the propriety of holding a hearing after the jury had been sworn. We noted that the singling out of one juror for questioning about bias presented a real danger of creating bias even if none existed before. We also concluded that the proper procedure for the trial court to pursue when confronted with the potential prejudice of an individual juror was to hold a hearing out of the presence of the remaining jury. At this hear-

ing the judge should determine whether there is juror bias and whether the hearing itself had created a bias in the juror.

■ Also, where a juror has been exposed to out-of-court remarks made by defendant, *Chambers v. State*, (1981) Ind., 422 N.E.2d 1198, or prejudicial publicity, *Lindsey v. State*, (1973) 260 Ind. 351, 295 N.E.2d 819, during the trial and before jury deliberation, the trial court must question the juror. This examination of the individual juror must be conducted outside the presence of the jury and the court should determine the extent of exposure and the likelihood of prejudice resulting therefrom. *Chambers*, 422 N.E.2d at 1204. After the juror has been interrogated, the juror should be admonished.

■ Juror questions presented to the trial court are another form of extraneous information similar to out-of-court remarks made by defendant and prejudicial publicity, and therefore the same procedures should be followed. The trial court's decision to examine Gates was therefore proper since his apparent concern with the racial composition of the jury, an extraneous issue to the case, could be indicative of juror prejudice against the state. The judge properly followed this procedure, determined that Gates could remain fair and impartial, and then permitted Gates to remain as a juror.

■ Defendant next argues that the inquiry and admonition to Gates "unfairly restricted the jury's consideration of Defendant's guilt or innocence and is similar to that evil addressed by this Court in the context of review of 'Allen' type instructions," citing *Lewis v. State*, (1981) Ind., 424 N.E.2d 107, and *Lowry v. State*, (1982) Ind., 440 N.E.2d 1123.

The "Allen" charge is a supplemental charge given by a trial judge to an apparently deadlocked jury, *Lewis*, 424 N.E.2d at 109, and this charge has the potential to influence unfairly the deliberative processes of the jury. *Lowry*, 440 N.E.2d at 1125. However, there was little in the court's admonition which was made to Gates before the case was submitted to the jury which could serve as the basis for an "Allen" type argument. The trial court did not try to influence the deliberative processes of the jury but rather carefully delineated an admonition to Gates which omitted any reference to Gates' concern of the racial composition of the jury.

The following procedures were held at sidebar to ensure that Gates could not hear and wherein the trial court discussed the nature and wording of the instruction to Gates:

THE COURT: "I can't tell this man not to discuss race in the deliberations or racial prejudice. I don't know exactly how to tell him."

MR. ZAPPIA: "I think he is extra-sensitive right now. I want to raise that issue after he's not here."

THE COURT: "I understand."

MR. ZAPPIA: "Just ask him not to discuss what we've talked about."

THE COURT: "I don't think I can say that because I'm telling him not to discuss racial prejudice in the deliberations. I think I can tell him not to tell the jurors why he was brought out here or what was said. I think if I go beyond that, I've committed serious prejudicial error."

(Whereupon the following proceedings were had in open court:)

THE COURT: "Mr. Gates, when you return to the jury room, I will direct you not to discuss or not to tell the other jurors why you were brought out here or what was said while you were here. Okay? Do you understand what I am saying?"

MR. GATES: "Even during the deliberations?"

THE COURT: "Even during the deliberations. Do not tell why you were brought out or what was said. Okay?"

"Under those instructions, you will be permitted to retire to the jury room again. Thank you, Mr. Gates."

Defendant maintains that the admonition violated defendant's right to a fair and impartial jury because the judge "improp-

erly invaded the province of the jury by restricting consideration by such juror, during the deliberation process of the relevant issue of race as it related to the credibility of the witnesses." The admonition to Gates prohibited Gates from discussing the hearing which was held and clearly did not instruct Gates in any way as to any issue or evidence in the case. As it was reasonable for the court to accept Gates's assurances that he could act impartially, particularly since the question presented by Gates was not at issue in the case, there was no abuse of discretion on the part of the trial court.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.